PENNSYLVANIA STATE POLICE and The Municipal Police Officers' Education and Training Commission, Petitioners

v.

Andrew McGILL and The Pittsburgh Post–Gazette, Respondents.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2013.

Decided Jan. 8, 2014.

Joanna N. Reynolds, Assistant Counsel, Harrisburg, for petitioners.

Frederick N. Frank, Pittsburgh, for respondents.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

The Pennsylvania State Police (PSP) and Municipal Police Officers' Education and Training Commission (MPOETC) appeal a determination of the Office of Open Records (OOR) ordering the PSP to disclose to Andrew McGill (McGill) and the Pittsburgh Post–Gazette (collectively, Requesters) the names of all police officers accredited by the MPOETC and their departments, but with the names of officers conducting undercover and covert operations redacted. For the reasons that fol-

low, we reverse the OOR's Final Determination.

## I.

### A.

On February 11, 2013, McGill, on behalf of the Pittsburgh Post–Gazette, submitted a request to the PSP under the Right–to–Know Law (RTKL)[1] seeking "[a]ny list, spreadsheet or database listing officers accredited by MPOETC and their departments." (Reproduced Record (R.R.) at 10). After invoking a 30–day extension to respond pursuant to Section 902 of the RTKL, 65 P.S. § 67.902, the PSP denied the request, contending that disclosure of the names may result in harm to the personal security of police officers, threaten public safety, and hinder the ability of an agency to secure an arrest.[2] The PSP also cited Section 708(b)(6)(iii) of the RTKL, which provides that "[a]n agency may redact the name or other identifying information relating to an individual performing an undercover or covert law enforcement activity from a record." 65 P.S. § 67.708(b)(6)(iii).

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. Specifically, the PSP gave the following reasons for its denial:
   - Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii), (exempting a record that, if disclosed, "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.")
   - Section 708(b)(2), 65 P.S. § 67.708(b)(2), (exempting "[a] record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.")

### B.

Requesters appealed to the OOR, arguing that the exemptions cited by the PSP are inapplicable because the PSP failed to prove that disclosure of the names of all MPOETC-accredited officers would be reasonably likely to result in any risk of harm and, to the extent disclosure of the names would compromise undercover activities, the PSP could redact the names of officers conducting those activities. In support of its denial, the PSP provided a position statement, along with the affidavits of William Rozier, the PSP's Open Records Officer, and Major Joseph Elias (Major Elias), the MPOETC's Executive Director.

Major Elias' affidavit provides, in relevant part, that there are currently over 1,100 municipal law enforcement agencies employing over 22,000 officers in the Commonwealth which are under the MPOETC's jurisdiction; that the MPOETC has no knowledge of or ability to determine each individual officer's working capacity or duties; and, therefore,

- Section 708(b)(3), 65 P.S. § 67.708(b)(3), (exempting a record that, if disclosed, "creates a reasonable likelihood of endangering the safety or physical security of a building, public utility, resource, infrastructure, facility or information storage system . . .")
- Section 708(b)(16)(vi)(D), 65 P.S. § 67.708(b)(16)(vi)(D), (exempting a record "relating to or resulting in a criminal investigation" that, if disclosed, would "[h]inder an agency's ability to secure an arrest, prosecution or conviction.")
- Section 708(b)(16)(vi)(E), 65 P.S. § 67.708(b)(16)(vi)(E), (exempting a record "relating to or resulting in a criminal investigation" that, if disclosed, would "[e]ndanger the life or physical safety of an individual.")

(R.R. at 5–6).

release of the list of all officers certified by the MPOETC "will inevitably provide the names of law enforcement officers performing an undercover or covert law enforcement activity." (R.R. at 21).

Major Elias opined that such disclosure would be reasonably likely to result in a substantial and demonstrable risk of physical harm to the personal security of those officers and any individuals assisting them; hinder arrests and prosecutions by subverting the ability of municipal law enforcement agencies to protect the identity of their undercover or covert officers; and create safety risks for all officers and facilities in the Commonwealth "because it will potentially provide a reference for criminals and even terrorists to assess the vulnerability of areas within the Commonwealth and/or the ability of officers to respond to an incident or attack." (*Id.* at 22).

■ The OOR concluded that the PSP failed to meet its burden of proving that the requested record was exempt from disclosure due to any public safety or personal security exemptions set forth in Sections 708(b)(1)(ii), (2), (3), (16)(vi)(D) and (16)(vi)(E). Specifically, the OOR found that the PSP failed to prove the existence of any "unique concerns and security risks" associated with the release of officers' names; provide evidence demonstrating that disclosure of that information would be reasonably likely to result in harm; or show that information regarding the names and employers of municipal law enforcement officers is a record of an agency relating to or resulting in a criminal investigation. (OOR's April 22, 2013 Final Determination at 6–8). However, relying on Major Elias' assertion that the requested list would inevitably contain the

names of officers performing undercover and covert operations, the OOR held that the PSP may redact the names of those individuals from the requested record pursuant to Section 708(b)(6)(iii). Accordingly, the OOR held that the PSP "is required to provide the requested record, with the names of municipal police officers conducting undercover and covert operations redacted, to the Requester[s] within thirty (30) days." (*Id.* at 8). This appeal by the PSP followed.[3]

## II.

### A.

■ Before we address the reasons that the PSP contends the OOR erred in stating that it had the obligation to provide a redacted list of all MPOETC-accredited police officers, we must reiterate that under the RTKL, all records in the possession of an agency are presumed "public" unless they are: (1) exempted by Section 708 of the RTKL; (2) protected by privilege; or (3) exempted "under any other Federal or State law or regulation or judicial order or decree." Section 305 of the RTKL, 65 P.S. § 67.305; *Office of Governor v. Scolforo,* 65 A.3d 1095, 1100 (Pa. Cmwlth.2013). The agency bears the burden of proving that a record is exempt from public access. Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1). We have also held that exemptions from disclosure must be narrowly construed due to the remedial nature of the RTKL, which is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions. *Scolforo,* 65 A.3d at 1100.

---

**3.** In appeals from determinations made by appeals officers under the RTKL, the Commonwealth Court's standard of review is *de* *novo* and its scope of review is plenary. *Bowling v. Office of Open Records,* —— Pa. ——, 75 A.3d 453, 477 (2013).

Regarding the issues that are before us in this appeal, Section 708(b)(6) of the RTKL sets forth what personal information of public officials and employees is exempt from disclosure:

(i) The following personal identification information:

(A) A record containing all or part of a person's Social Security number; driver's license number; personal financial information; home, cellular or personal telephone numbers; personal e-mail addresses; employee number or other confidential personal identification number.

(B) A spouse's name; marital status, beneficiary or dependent information.

(C) The home address of a law enforcement officer or judge.

(ii) **Nothing in this paragraph shall preclude the release of the name, position, salary, actual compensation or other payments or expenses, employment contract, employment-related contract or agreement and length of service of a public official or an agency employee.**

(iii) **An agency may redact the name or other identifying information relating to an individual performing an undercover or covert law enforcement activity from a record.**

65 P.S. § 67.708(b)(6) (emphasis added).

### B.

■ While the primary issue raised by the PSP is whether it must provide a redacted list of all MPOETC-accredited police officers, we nonetheless must address the PSP's secondary argument that it has met its burden of proving that the requested record is exempt from disclosure under the public safety and personal security exemptions set forth in Sections 708(b)(1)(ii), (2), (3), (16)(vi)(D) and (16)(vi)(E). The PSP argues that the release of those names would constitute a safety risk for all officers and facilities in the Commonwealth because it would somehow potentially provide a reference for criminals or terrorists to assess the vulnerability of areas within the Commonwealth and the ability of officers to respond to an incident or attack based on how many police officers a municipality employs. Simply, it contends that the names of all police officers or the amount budgeted by a public entity for public safety should not be disclosed. That position is wrong for several reasons.

Absent particularized concerns about the personal security of an individual, the General Assembly has made the policy decision that "nothing ... shall preclude the release of the name ... of a public official or an agency employee." 65 P.S. § 67.708(b)(6)(ii). The only name of a public employee that cannot be released is the name of an individual, whether a police officer or not, who is engaged in undercover or covert work. As to the argument that releasing the names of police officers would allow criminals to estimate the amount of money the state or municipality spends on public safety, the General Assembly has stated that the amount spent by public bodies is always public. We do not have "classified" sections of state or municipal budgets to preclude the public from knowing the number of budgeted officers or the amount a particular community spends on public safety—citizens have a right to know how their tax dollars are being allocated to public safety to determine if the amount is too much or too little.

### C.

As to its central argument that the OOR erred in ordering that it provide a redacted list of all MPOETC-accredited police officers, the PSP contends that Major Eli-

as' affidavit unequivocally establishes that it lacks the information necessary to redact the requested record as ordered by the OOR. The PSP argues that only local police departments have knowledge of which officers are conducting undercover and covert operations, and because there are more than 1,100 municipal law enforcement agencies under the MPOETC's jurisdiction, it would be logistically impossible for the PSP to ensure that the names of those officers are accurately redacted.

In response, Requesters' argument is simple: that under Section 708(b)(6) of the RTKL, the PSP has to provide the names of all accredited police officers, with the exception that it can redact the names of individuals performing undercover or covert activities, even if that means contacting every police department in the Commonwealth in order to make that determination. We note that is consistent with Section 706 of the RTKL, relating to redaction, which provides that if a record "contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access." 65 P.S. § 67.706. It then goes on to state that "[t]he agency may not deny access to the record if the information which is not subject to access is able to be redacted." *Id.*

■ While this provision seems clear, like many other provisions, when considered with other provisions that express countervailing principles, it becomes less so. Section 705 of the RTKL pertains to requests for records which are not within the possession of an agency or which exist in a different format than the one requested. That section provides, "[w]hen re-

sponding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705. That provision precludes a requester from being able to "shanghai" government employees to create a record when one does not exist and take them away from carrying out their normal responsibilities. However, this section does not permit an agency to avoid disclosing existing public records by claiming, in the absence of a detailed search, that it does not know where the documents are. *Department of Environmental Protection v. Legere,* 50 A.3d 260, 267 (Pa.Cmwlth.2012). Moreover, drawing information from a database does not constitute creating a record under the RTKL. *Department of Environmental Protection v. Cole,* 52 A.3d 541, 547 (Pa.Cmwlth.2012).

■ However, unlike in *Legere* and *Cole,* where the agency possessed the information necessary to comply with a RTKL request but simply did not take adequate steps to supply that information, this appeal presents a unique situation in which the request encompasses information that is clearly protected from disclosure, but the agency has no way of discerning which information is protected. Here, it is undisputed that the "MPOETC maintains and regularly updates a database containing the names of each municipal law enforcement agency and all certified officers employed by the agency." (Major Elias' Affidavit at ¶ 9, R.R. at 21). However, that affidavit also clearly establishes that MPOETC has no record of the duties or work assignments of each of those individual officers, including whether an officer is part of an undercover or covert operation.[4] To obtain the informa-

4. This Court has previously held that an affi- davit stating that a record does not exist with-

tion necessary to comply with the request **and** ensure that confidential information is not disclosed, the PSP cannot simply examine and compile information already in its possession. Rather, the PSP would be required to coordinate with more than 1,100 municipal law enforcement agencies throughout the Commonwealth, as only those local agencies maintain information relating to which officers are currently performing undercover and/or covert operations. Given the sheer number of departments that the PSP would have to contact, along with the fact that the officers assigned to undercover or covert operations in a department is constantly subject to change, we agree with the PSP that it could not possibly comply with the OOR's Final Determination. Because the OOR ordered the PSP to redact the names of officers conducting undercover and covert operations, but neither the PSP nor MPOETC have a record of which officers are performing those functions, the OOR's Final Determination, in essence, requires the PSP to "create a record" in violation of Section 705 of the RTKL.

This does not mean that the names of police officers who have been accredited by MPOETC cannot be obtained. A requester can request the names of all police officers employed by the Commonwealth, municipalities or other governmental police departments. It would be up to those individual police departments to provide the requester with a list of police officers with the names of those police officers who are engaged in undercover or covert activities redacted. Of course, those individual police departments can raise any other exception authorized by the RTKL. The requester could then give that list to the

PSP, which would be obligated to provide the requested accreditation information.

Accordingly, for the foregoing reasons, the OOR's Final Determination is reversed.

Judge BROBSON did not participate in the decision of this case.

### ORDER

AND NOW, this *8th* day of *January,* 2014, the Final Determination of the Office of Open Records, dated April 22, 2013, at Docket No. AP 2013–0472, is reversed.

DISSENTING OPINION by Judge LEAVITT.

The Pennsylvania State Police has been requested to produce a list of the police officers in the Commonwealth who have been accredited by the Municipal Police Officers' Education and Training Commission. The State Police has this information and can produce it with the push of a button. For this reason, the Office of Open Records (OOR) ordered the State Police to produce this list and, if it so desired, redact the names of those police officers working undercover. The majority reverses because it concludes that OOR's order required the State Police to create a new document. I disagree that an agency's redaction of an existing document is, as a matter of law, the creation of a document. If that is so, then any agency may refuse to produce a public record whenever there is information it desires to redact from that record. For this reason, I respectfully dissent.

The Right–to–Know Law[1] relieves an agency of the burden of having to create a

---

in an agency was sufficient to establish the nonexistence of the record. *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1193 (Pa.Cmwlth.2011); *Moore v. Office of*

*Open Records*, 992 A.2d 907, 909 (Pa.Cmwlth. 2010).

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

new record in order to respond to a request. Specifically, Section 705 states as follows:

When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record.

65 P.S. § 67.705. In this case, there is no dispute that the State Police "currently maintains" a list of all accredited police officers.

The Right–to–Know Law also establishes that the name of each government employee is subject to disclosure upon request. Section 708(b)(6)(ii) states as follows:

*Nothing in this paragraph shall preclude the release of the name,* position, salary, actual compensation or other payments or expenses, employment contract, employment-related contract or agreement and length of service of a public official or an agency employee.

65 P.S. § 67.708(b)(6)(ii) (emphasis added). Section 708(b)(6)(ii) leaves no doubt that the name of every police officer in the Commonwealth is public information that must be released upon request.

To be sure, an agency is not required to release the names of employees or other individuals, who may or may not be police officers, if they "are performing an undercover or covert law enforcement activity." Section 708(b)(6)(iii) of the Right–to–Know Law states, in relevant part, as follows:

An agency may redact the name or other identifying information relating to an individual performing an undercover or covert law enforcement activity from a record.

65 P.S. § 67.708(b)(6)(iii). The majority reads Section 708(b)(6)(iii) as establishing a mandate that the agency never disclose the name of an individual "performing an undercover or covert law enforcement activity." This expansive reading is not consistent with the actual language of Section 708(b)(6)(iii), which merely permits the redaction of the name of an individual so engaged. Section 708(b)(6)(iii) does not require redaction, and there are reasons why an agency might choose not to redact the true name of an individual engaged in "undercover or covert" law enforcement. Nor does Section 708(b)(6)(iii) prohibit disclosure. In short, Section 708(b)(6)(iii) does not justify the State Police's refusal to provide the list of police officers certified by the Municipal Police Officers' Education and Training Commission or to undertake a redaction where appropriate.

The State Police has not been asked to create a new record but to provide an existing public record. The fact that the State Police may wish to exercise its discretion to redact the record does not relieve it of its duty to provide the record.

There are many situations where an agency may not disclose information contained in a requested public record. The most common is where the agency wants to protect the personal security of an employee. Section 708(b)(1)(ii) of the Right–to–Know Law states, in relevant part, as follows:

(b) Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

(1) A record, the disclosure of which:

\* \* \*

(ii) would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.

65 P.S. § 67.708(b)(1)(ii). However, the fact that a record is exempt from disclo-

sure does not lead automatically to a denial of a record request. Rather, the agency must consider a redaction of the exempt information. Section 706 states:

> If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the *agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access.* If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. *The agency may not deny access to the record if the information which is not subject to access is able to be redacted.* Information which an agency redacts in accordance with this subsection shall be deemed a denial under Chapter 9.

65 P.S. § 67.706 (emphasis added). Here the list of certified police officers includes "information which is subject to access as well as information which is not subject to access." *Id.* The State Police is required to "grant access to the information subject to access." *Id.*

An agency never knows, upon receiving a request for a public record, whether the request will affect the personal security of an employee or third party. It will always have to seek out this information from others, and this is a burden. However, there is no exemption in the Right-to-Know Law from the duty to disclose a public record because of the burden of undertaking a redaction to protect the personal security of an individual. Redaction is a vehicle that advances greater disclosure, not less. The State Police may charge the requester for its costs in seeking this information from police departments that may, or may not, want the names of their undercover police officers redacted. Section 1307(g) of the Right–to–Know Law provides that an agency may impose fees on a requestor if the fees are provided for by statute or the agency "necessarily incurs costs for complying with the request" and the fee is reasonable. 65 P.S. § 67.1307(g).

For these reasons, I would affirm the final determination of the Office of Open Records, which gave the State Police the opportunity to redact the names of undercover police officers after consulting with local police departments.[2]

---

**2.** Here, the burden of contacting police departments is not clear. The Municipal Police Officers' Education and Training Commission is in constant communication with police departments around the Commonwealth. It must have the ability to contact electronically its contacts at these departments.