IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,       :
              Petitioner    :
                                :
          v.                 :   No. 1646 C.D. 2014
                                :   Submitted: March 20, 2015
Casey Grove,              :
              Respondent  :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                     FILED: September 28, 2015

The Pennsylvania State Police petition for review of a final adjudication of the Office of Open Records (OOR) ordering the State Police to provide Casey Grove with a copy of a video recording of his interaction with a State trooper during a traffic stop. The State Police argues that OOR erred in concluding that the recording is not exempt from disclosure under both the Right-to-Know Law, 65 P.S. §§67.101-67.3104,[1] and the Criminal History Record Information Act (CHRIA), 18 Pa. C.S. §§9101-9183. For the reasons that follow, we affirm OOR's decision.

On April 27, 2014, Grove submitted the following records request to the State Police:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

I would like to have a copy of all audio & video pertaining to the traffic stop made by PA state police officer #10474 (Shrivers?) [Shivery] with Rockview barracks, against Casey J Grove of 103 Hidden Springs Ln, Spring Mills PA. The traffic stop was made at 8:53am on 4/23/14 on Commercial Blvd, State College PA 16801 (College Township). I specifically request any and all audio/video from 8:30am until conclusion of the traffic stop, as well as any radio audio and transcript between the officer, fellow officers, headquarters, and supervisors from 8:30am until the conclusion of the traffic stop. Traffic stop was for an obstruction of license plate.

Reproduced Record at 1a (R.R.__). The State Police's Deputy Agency Open Records Officer, Lissa Ferguson, denied Grove's request by letter dated June 4, 2014. Ferguson explained that the requested "Mobile Video Recording (MVR)" was exempt from disclosure as an investigative record under Section 708(b)(16) of the Right-to-Know Law, 65 P.S. §67.708(b)(16), and Section 9106(c)(4) of CHRIA, 18 Pa. C.S. §9106(c)(4). R.R. 2a. Because Ferguson concluded that all responsive video recordings are exempt, she did not describe the particular recording requested to show how, in fact, it was investigative. Ferguson further explained that the State Police did not possess audio recordings or transcripts responsive to Grove's request.

Grove appealed to OOR, arguing that the State Police's invocation of the investigative exemption was overbroad. In this case, it did not show that the recording related to a criminal investigation. According to Grove, he did not receive a citation, and the warning he received from Trooper Shivery for "obstruction of license plate" was later determined to be unfounded by Centre County Sheriff Dennis Nau. R.R. 12a.

In its response to Grove's appeal, the State Police argued that OOR's prior decision in *Keller v. Pennsylvania State Police*, Dkt. AP 2014-0241 (March

2

13, 2014), was controlling. In that case, OOR held that mobile video/audio recordings are barred from disclosure under Section 708(b)(16) of the Right-to-Know Law. The State Police also cited OOR's decision in *Otto v. Pennsylvania State Police*, Dkt. AP 2013-2323 (January 3, 2014), which was cited in *Keller*. Finally, the State Police provided an affidavit of their Agency Open Records Officer, William A. Rozier, J.D., confirming that there were no audio recordings responsive to Grove's request and stating as follows with regard to the mobile video recording:

> 11. A review of the [Mobile Video Recording] details a traffic stop conducted by Trooper Shivery regarding an in-progress vehicle code violation. Although the "on person" microphone was active, it did not record the encounter as indicated by the MVR and [Mobile Video Recording] download request form.
>
> 12. In accordance to PSP Field Regulation 6-12, Troopers should endeavor to use the [Mobile Video Recordings] for incidents involving traffic and enforcement stops and in-progress vehicle and crimes code violations.

Rozier Aff., June 25, 2014, at ¶¶11-12; R.R. 18a.

On review, OOR affirmed in part and reversed in part. Specifically, OOR affirmed that the State Police was under no obligation to produce audio recordings and transcripts that do not exist. However, OOR reversed the State Police's decision to withhold the mobile video recording for the stated reason that it was "investigative" in nature. OOR expressly reversed *Otto* and *Keller*, holding that those decisions were overbroad because they created a blanket exemption for mobile video recordings without first considering whether the recording at issue is, in fact, investigatory in nature. OOR further explained:

[A Mobile Video Recording's] purpose is to document traffic stops conducted by law enforcement. As such, *[a Mobile Video Recording] is a routine and automatic function of police work and does not inherently relate to any specific investigation. Further, [a Mobile Video Recording] does not reveal whether an investigation has been instituted or the progress of an ongoing investigation.* Therefore, the record itself – a video – is not "investigatory" in nature, even though it may be or has been obtained and used as evidence during an investigation. The video merely chronicles factual events with no indication of whether an investigation has commenced, is ongoing or will occur. The start of an investigation does not automatically convert a public record into an exempt one.

OOR Adjudication at 5 (emphasis added). The State Police petitioned this Court to review OOR's decision.

On appeal,[2] the State Police contend that the mobile video recording of Grove's traffic stop is exempt from disclosure under Section 708(b)(16) of the Right-to-Know Law and CHRIA because it is investigative in nature.[3] The State Police also filed an application to supplement the record with an additional affidavit by Rozier dated December 31, 2014, that provides more details about the mobile video recording.

We consider, first, the State Police's application to supplement the record with Rozier's December 31, 2014, affidavit. Under our *de novo* standard of review, this Court has "the authority to expand [the] record" in a Right-to-Know Law case when doing so will help us resolve the matter. *Bowling v. Office of Open Records*, 75 A.3d 453, 476 (Pa. 2013). "Consideration of additional evidence is

---

[2] When considering an appeal from the OOR under the Right-to-Know Law, this Court exercises plenary, *de novo* review. *Bowling v. Office of Open Records*, 75 A.3d 453, 476 (Pa. 2013).

[3] Grove was precluded from participating in this appeal.

4

particularly appropriate where the requested items involve law enforcement or public security issues and the OOR record contains no information on their nature and content." *Pennsylvania State Police v. Grove*, ___ A.3d ___ (Pa. Cmwlth., No. 1146 C.D. 2014, filed July 7, 2015) at 4.

The State Police argues that, in its appeal to OOR, it relied upon OOR's prior rulings in *Otto* and *Keller* that mobile video recordings were inherently investigative in nature and therefore exempt. Thus, the State Police's record before the OOR, including Rozier's original affidavit of June 25, 2014, was devoid of information on the purpose of a mobile video recording, details about the recording of Grove's traffic stop, and the State Police's reasoning for claiming the recording is exempt. Rozier's supplemental affidavit aims to fill in those gaps.

Given this unusual circumstance, and the limited amendment to the record, we will grant the State Police's application to supplement the record and not remand the matter to OOR. Rozier's supplemental affidavit provides facts necessary to determine whether the mobile video recording at issue is investigative in nature. *See also Grove,* slip op. at 3-5 (granting State Police's application to supplement record with affidavit of William Rozier in factually similar case).

In his affidavit, Rozier states that the mobile video recording system in a police vehicle is activated when the trooper activates the emergency lights or siren. Pursuant to the State Police's internal field regulations, troopers "shall endeavor" to use this technology to record, *inter alia*, "[t]raffic and criminal enforcement stops," "[i]n-progress Vehicle and Crimes Code violations," and "[p]olice pursuits." Rozier Aff., December 31, 2014, at ¶14.[4] Rozier confirms that

---

[4] Pursuant to the field regulation, state troopers shall also endeavor to record field interviews, interrogations and intoxication testing; patrol vehicle travel and movements when emergency **(Footnote continued on the next page . . .)**

he "personally viewed the MVR that is the subject of this appeal and it clearly depicts a traffic stop conducted by Trooper Shivery regarding an in-progress vehicle code violation, resulting in a written warning being issued [to Grove]." *Id.* at ¶16. Rozier describes the events recorded in the video as follows:

> The [Mobile Video Recording] begins with a maroon Nissan Frontier pickup truck being visible through Trooper Shivery's windshield. The pickup truck then makes a right hand turn followed by a left hand turn before stopping. Trooper Shivery's cruiser then pulls up behind the vehicle. Trooper Shivery can then be seen approaching the driver side of the pickup truck and then engaging in conversation with the driver. The driver then hands Trooper Shivery paperwork and Trooper Shivery returns to his vehicle. After some time passes, Trooper Shivery can then be seen again approaching the driver side of the pickup truck and returning paperwork to the driver, engaging in conversation with the driver, and then handing a written warning to the driver. The [Mobile Video Recording] ends following the end of the traffic stop.

*Id.* at ¶11. Rozier attests that the purpose of a written warning "is to provide written notification of a violation of the Vehicle Code to an individual when a Traffic Citation is not issued due to the minor nature of the violation, or due to insufficient evidence for a prosecution." *Id.* at ¶16. With the record now complete, we consider the merits of the State Police's petition for review.

The Right-to-Know Law requires Commonwealth agencies to provide public records upon request. Section 3.1 of the Right-to-Know Law, 65 P.S.

---

**(continued . . .)**
lights and/or siren are activated; fatal crash or major crime scenes, as necessary, to document the scene; traffic safety and sobriety checkpoints; prisoner transports; searches of vehicles and/or persons; and any other incident the trooper deems appropriate while acting in the performance of his or her official duties. Rozier Aff., December 31, 2014, at ¶14.

§67.301. A record is presumed to be a "public record" unless it is exempt from disclosure under Section 708 of the Right-to-Know Law, 65 P.S. §67.708; exempt from disclosure under federal or state law, regulation or judicial decree; or protected by privilege. Section 102 of the Right-to-Know Law, 65 P.S. §67.102 (defining "public record"). A government agency claiming that a requested record is exempt from public access must prove by a preponderance of evidence that the claimed exemption applies. Section 708(a)(1) of the Right-to-Know Law, 65 P.S. §67.708(a)(1). A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to "a more likely than not" inquiry. *Carey v. Department of Corrections*, 61 A.3d 367, 374 (Pa. Cmwlth. 2013).

Exemptions from disclosure under the Right-to-Know Law are narrowly construed. *Pennsylvania State Police v. McGill*, 83 A.3d 476, 479 (Pa. Cmwlth. 2014). The so-called "criminal investigation" exemption states that a requester shall not have access to "[a] record of an agency relating to or resulting in a criminal investigation," including "[i]nvestigative … videos." 65 P.S. §67.708(b)(16)(ii).[5] The Right-to-Know Law does not define "criminal investigation."

---

[5] In full, Section 708(b)(16) of the Right-to-Know Law exempts the following from public access:

> (16) *A record of an agency relating to or resulting in a criminal investigation, including*:
>> (i) Complaints of potential criminal conduct other than a private criminal complaint.
>> (ii) *Investigative materials, notes, correspondence, videos and reports*.
>> (iii) A record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised.

**(Footnote continued on the next page . . .)**

7

Section 9106(c)(4) of CHRIA prohibits the disclosure of "investigative information" to departments, agencies, or individuals that are not classified as criminal justice agencies. 18 Pa. C.S. §9106(c)(4).[6] CHRIA defines

**(continued . . .)**

> (iv) A record that includes information made confidential by law or court order.
>
> (v) Victim information, including any information that would jeopardize the safety of the victim.
>
> (vi) A record that, if disclosed, would do any of the following:
>
>> (A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.
>>
>> (B) Deprive a person of the right to a fair trial or an impartial adjudication.
>>
>> (C) Impair the ability to locate a defendant or codefendant.
>>
>> (D) Hinder an agency's ability to secure an arrest, prosecution or conviction.
>>
>> (E) Endanger the life or physical safety of an individual.
>
> This paragraph shall not apply to information contained in a police blotter as defined in 18 Pa.C.S. § 9102 (relating to definitions) and utilized or maintained by the Pennsylvania State Police, local, campus, transit or port authority police department or other law enforcement agency or in a traffic report except as provided under 75 Pa. C.S. §3754(b)(relating to accident prevention investigations).

65 P.S. §67.708(b)(16) (emphasis added).

[6] Section 9106(c)(4) of CHRIA states:

> Investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprint, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa. C.S. §9106(c)(4).

"investigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." 18 Pa. C.S. §9102.

Here, the State Police argues that OOR erred in holding that the mobile video recording was not "investigatory" in nature and, thus, not exempt from disclosure. The State Police contends that under Section 708(b)(16) of the Right-to-Know Law, it need show only that the record "relates to or results in" a criminal investigation. OOR misinterpreted Section 708(b)(16)'s broad general exemption by importing language from the more specific example in subsection (b)(16)(vi)(A)[7] and requiring the State Police also to show that disclosure will reveal whether an investigation has been instituted or the progress of an ongoing investigation. The State Police further argues that it satisfied its burden of proving an exemption under Section 708(b)(16) by a preponderance of evidence. Specifically, the State Police asserts that the affidavit of Rozier establishes that the mobile video recording related to a criminal investigation because it depicted a traffic stop for an in-progress vehicle code violation. For the same reason, the State Police argues that the recording is exempt from disclosure under "state law," *i.e.*, CHRIA, and therefore not a "public" record.

This Court recently addressed a request for access to mobile video recordings in *Pennsylvania State Police v. Grove*, ___ A.3d ___ (Pa. Cmwlth., No. 1146 C.D. 2014, filed July 7, 2015).[8] In *Grove*, State Troopers Vanorden and Thomas each responded to the scene of a two-vehicle accident. Both of their

---

[7] *See* n.5, *supra*, for the text of Section 708(b)(16)(vi)(A).
[8] Although the requesters in these cases share the same surname, the cases are unrelated.

vehicles generated mobile vehicle recordings. Trooper Vanorden's recording did not contain an audio component, but it showed the trooper speaking with the two drivers and directing one of them to move his vehicle. Trooper Thomas' recording contained both video and audio of his interviews of the two drivers and bystanders concerning the accident. The requester sought access to both recordings. The State Police denied the request on the basis that the recordings were exempt from disclosure under Section 708(b)(16) and CHRIA because they related to a motor vehicle accident which resulted in traffic citations, which are summary criminal offenses. Further, one of the troopers investigated the accident before issuing the citations. The requester appealed to OOR, which reversed the State Police's decision and, in doing so, also reversed its prior decisions in *Keller* and *Otto* holding that mobile vehicle recordings are inherently investigative. The State Police petitioned for this Court's review.

This Court affirmed OOR's determination and ordered the State Police to provide the requester with unredacted copies of the Vanorden recording and the video component of the Thomas recording.[9] We rejected the State Police's argument that the video recording documented a criminal investigation simply because the traffic accident resulted in a citation. We stated that "[t]he mere fact that a record has some connection to a criminal proceeding does not automatically exempt it under [the Right-to-Know Law or CHRIA]." *Grove*, slip op. at 8. We further explained that the State Police's evidence demonstrated that

> the [Mobile Video Recordings] are created to document troopers' performance of their duties in responding to

_____

[9] We remanded the case to permit the State Police to redact the audio portions of the Thomas recording to the extent they contained witness interviews or utterances of private individuals who had no notice of the recording.

10

emergencies and in their interactions with members of the public, not merely or primarily to document, assemble or report on evidence of a crime or possible crime. The [Mobile Video Recording] equipment is activated when an officer's sirens or emergency lights are turned on, a non-investigative event. Moreover, [the State Police use Mobile Video Recordings] to document the entire interaction and actions of the trooper, including actions which have no investigative content, such as directions to motorists in a traffic stop or at an accident scene, police pursuits, and prisoner transports. *[Mobile Video Recordings] themselves are therefore not investigative material or videos, investigative information, or records relating or resulting in a criminal investigation exempt from disclosure under Section 708(b)(16) of the [Right-to-Know Law] or [CHRIA].*

*Id*. at 9-10 (internal citations omitted and emphasis added).

In sum, *Grove* held that mobile video recordings are not automatically exempt under Section 708(b)(16). Further, the State Police did not prove by a preponderance of evidence that the video recordings were exempt as records relating to a criminal investigation. According to Rozier's affidavit, the Vanorden recording depicted the trooper "speaking with the operators of the vehicles," "observing the crash scene and the damage to the vehicles," and "directing the operator of the truck … to move his vehicle." *Grove*, slip op. at 11. We concluded that these activities did not constitute "investigative content," which we suggested would include activities such as taking measurements, collecting evidence, or physically inspecting or analyzing an accident scene. Similarly, we held that the State Police offered no evidence that the video component of the Thomas recording depicting the trooper having conversations with the drivers and bystanders was investigative in nature.

11

The case *sub judice* is virtually indistinguishable from *Grove*. According to Rozier's affidavit, the recording in this case depicts an "in-progress vehicle code violation," *i.e.*, obstruction of a license plate, that resulted in a warning. In *Grove*, the activity recorded actually did result in a traffic citation, *i.e.*, a summary criminal offense. Nevertheless, we found the connection to a criminal investigation too tenuous to allow the State Police to claim the recording to be exempt as investigatory in nature. Here, "the connection to a criminal proceeding" is non-existent. *Grove*, slip op. at 4. Grove received only a warning. Based on the principles established in *Grove*, the recording requested by Grove is not exempt from disclosure under the Right-to-Know Law or CHRIA.

Accordingly, we affirm the Final Determination of the Office of Open Records.

_____
MARY HANNAH LEAVITT, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,      :
            Petitioner      :
                           :
         v.                 :   No. 1646 C.D. 2014
                           :
Casey Grove,               :
            Respondent    :

# **O R D E R**

AND NOW, this 28th day of September, 2015, the Application of Petitioner Pennsylvania State Police to Supplement the Record is GRANTED. The Final Determination of the Office of Open Records dated August 18, 2014, in the above-captioned matter is hereby AFFIRMED.

                                  _____

                                  MARY HANNAH LEAVITT, Judge