# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Center for Investigative Reporting   :
d/b/a Reveal,   :
               Petitioner   :
  :
         v.   :   No. 227 C.D. 2023
  :
Pennsylvania Department of Health   :
(Office of Open Records),   :
             Respondent   :   Argued: May 7, 2024

BEFORE:   HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                           FILED:  June 5, 2024

The Center for Investigative Reporting d/b/a Reveal (Requester) petitions for review from a Final Determination of the Office of Open Records (OOR) dated February 6, 2023 that denied its appeal from the Pennsylvania Department of Health's (Department) partial denial of its request under the Right-to-Know Law (RTKL).[1]  We affirm.

## BACKGROUND

On August 4, 2022, Requester filed a request (Request) with the Department seeking records related to cases of reported neonatal abstinence syndrome (NAS) for years 2020 and 2021.  Specifically, Requester sought:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Aggregate data held by the Bureau of Epidemiology regarding cases of [NAS] reported to the Bureau of Epidemiology in the years 2020 and 2021, including:

a) Data indicating the number of reported NAS cases, on an aggregate statewide basis;

b) Data for cases referred to ChildLine, the substance(s) to which infants were exposed, on an aggregate statewide basis;

c) Data indicating the number of Plans of Safe Care initiated, the substance(s) to which infants were exposed on an aggregate statewide basis; and

e)[2] Data indicating to whom infants were discharged, the substance(s) to which infants were exposed, on an aggregate statewide basis.

Reproduced Record (R.R.) 001a. Requester clarified that it is "not requesting any confidential or protected health information [] and/or personally-identifiable information. . . ." *Id.*

By letter mailed September 12, 2022, the Department granted the Request in part, by providing a weblink to the "Neonatal Abstinence Syndrome: 2020 Report" issued August 2022 by the Bureau of Family Health and Bureau of Epidemiology (2020 NAS Report), and providing pinpoint cites in response to the itemized Requests listed at letters "a" through "e."[3] *Id.* at 003a. The Department

---

[2] It appears Requester mistakenly omitted the letter "d" in the Request.

[3] The Department stated:

Request "a" is addressed on page 22. Data limitations are described on page 8 of the report and in the narrative sections on pages 13 and 20, as related to items "b," "c," and "e" of the request. Requests "b," "c," and "e" are addressed on page 34, but is not stratified to include the substances the infant was exposed to. Information on substances an infant was exposed to can be found on page 29 of the report.

Reproduced Record (R.R.) 003a.

2

otherwise denied the Request, certifying that it "has conducted a search and [has] been advised that no additional responsive records exist within the Department's custody, possession, or control concerning your RTKL request. The Department is not required to create new records in response to an RTKL request." *Id.*

Requester appealed the Department's September 12, 2022 letter to the OOR, arguing that (1) the Department failed to prove that a reasonable search was done and that records responsive to Requests "b," "c," and "e" do not exist; (2) the Department unjustifiably refused to provide the requested data from existing records; and (3) that redacting the requested data from existing case reports would not constitute the "creation of a new record" under the RTKL. *Id.* at 005a-015a. Specifically, Requester maintained that the narrative section of the 2020 NAS Report belies the Department's claim that it exhausted its search for responsive records. It submitted that the narrative section explains that "hospitals submitted case reports for newborns meeting NAS criteria to the [Department's] internet case management system (iCMS), a web-based software application . . . used to track and manage newborn screening results." R.R. 011a. Requester further argued that "[t]he fact that each individual report is submitted to an online case management system indicates that there are records pertaining to [Requester's] [R]equests 'b,' 'c,' and '[e]' for aggregate data outside of the [2020 NAS Report]." *Id.* Requester asserted that "the responsive records to [Requester's] requests are the reporting forms themselves submitted individually and stored collectively on the Department's electronic case management system." *Id.* at 013a. Acknowledging that the individual report forms will contain sensitive information, Requester averred that RTKL and associated case law require agencies to redact exempt information while

3

disclosing non-exempt information, and such redactions, even if voluminous, would not amount to the creation of a new record. *Id.*

In response to Requester's appeal, the Department submitted the attestations of (1) Tara Trego, Director of the Department's Bureau of Family Health (Trego Attestation), and (2) Danica Hoppes, Legal Administrative Officer and Open Records Officer for the Department (Hoppes Attestation) to the OOR.

On February 6, 2023, the OOR denied Requester's appeal. Requester's Brief, Exhibit A (Final Determination). The OOR concluded that through the submission of the Trego and Hoppes Attestations, the Department carried its burden of proof that it conducted a good faith search and that no additional records responsive to Requests "b," "c," and "e" exist. Final Determination at 4-7. In so concluding, the OOR relied on the Hoppes Attestation, which provided, in relevant part:

> 1. On August 5, 2022[,] [Hoppes] received this [R]equest. That same day reviewed it, logged it, and circulated the entire [R]equest to Department personnel who [Hoppes] believed most likely to possess responsive records.
>
> 2. This initially included personnel from the Bureau of Epidemiology as well as members of the office Legal Counsel.
>
> 3. [Hoppes] attached a copy of the [R]equest, and included the following in the email: [. . .]
>
> 4. The week after the email was circulated, a recipient from the [Bureau] raised points for discussion and also suggested that the email be forwarded to Department personnel within the Bureau of Family Health since the NAS reporting had been transitioned to that Bureau.

4

5. Several individuals from the Bureau of Family Health then joined in on the discussion regarding interpretation of the [R]equest and potentially responsive records.

6. Once a consensus was reached about the scope of the [R]equest and the potentially responsive records in the Department's possession, [Hoppes] was advised by the Deputy Secretary for Health Promotion and Disease Prevention within the Bureau of Family Health that the 2021 data was not finalized.

7. [Hoppes] reviewed responses to the above-described email as well as the records provided in response to this email.

8. [Hoppes] was advised that the 2020 NAS Annual Report of the Bureaus of Family Health and Epidemiology (Annual Report) contained the only responsive records in the Department's possession.

9. It was further explained that the data contained in the Annual Report was "not stratified to include to [*sic*] substances the infant was exposed to."

10. There was no indication that any additional records existed and none of the recipients of the email suggested additional custodians of records beyond those discussed above.

11. Accordingly, based on the inter-bureau discussions and information provided to [Hoppes], [Hoppes] concluded that the Annual Report was the only responsive record in the possession of the Department.

12. [Hoppes] included a link to the Annual Report in the Department's final response to the RTKL request, which [Hoppes] sent to the [R]equester on September 12, 2022. [Hoppes] also explained that the 2020 data was not stratified in the manner requested, and that the 2021 data was not finalized was [*sic*] therefore not available.

13. [Hoppes has] no information or reason to believe that the Department is [*sic*] possession of responsive records beyond those already provided to the [R]equester.

*Id.* at 4-5 (quoting Hoppes Attestation). Additionally, the OOR relied on a portion of the Trego Attestation, which states:

1. The 2020 NAS Annual report constitutes the aggregated version of the data sought by the [R]equester, i.e., it provides the total number of cases, the total number of plans of safe care initiated, the total number of ChildLine referrals, and the total number of each category of discharge plan. The Bureau does not have additional aggregated data reflecting these categories of information.

2. The 2020 NAS Annual report is the only record in the Bureau's possession reflecting the aggregated data requested for 2020.

3. Other than the 2020 NAS Annual Report, the Bureau does not maintain an aggregated or de-identified set of data containing the requested information for the year 2020.

*Id.* at 5 (quoting Trego Attestation). The OOR held that based on its review of the evidence, including the 2020 NAS Report reflecting responsive data to Requests "b," "c," and "e," and the Trego and Hoppes Attestations stating that all responsive records have been provided, the Department met its burden of proof that no additional responsive records exist within its possession, custody, or control. *Id.* at 6-7.

The OOR next addressed Requests "b," "c," and "e" to the extent they sought data regarding individual substances to which infants were exposed. The OOR accepted the Department's argument that it does not possess responsive aggregated data that correlates individual substances beyond what is contained in

6

the 2020 NAS Report, and that comprising this information would require the Department to create a new record. The OOR found conclusive a portion of the Trego Attestation, which provides:

> 6. With respect to the information requested in [Items a-e] of the [R]equest for 2020, the aggregated statewide data reflecting the number of [NAS] cases, the number of cases referred to ChildLine, number of Plans of Safe Care initiated and data regarding discharge plans can be found in the 2020 NAS Annual Report.
>
> 7. Because this is where the responsive aggregated data are located, [Trego] advised the [Department] to provide the 2020 NAS Annual Report in response to the above-referenced RTKL [R]equest.
>
> 8. Any information beyond the NAS Annual Report, specifically including the data underlying the reports that are maintained by the Department (NAS Database) are not aggregated but rather consist of individual case reports of NAS.
>
> . . . .
>
> 11. Beginning on January 1, 2020, NAS case report data have been reported to the Bureau of Family Health, where case data are integrated with newborn screening data reported to the Bureau, in an electronic database known as the [iCMS].
>
> 12. In response to the above-referenced [R]equest, the Department provided the 2020 NAS Annual Report, prepared jointly by the Bureaus of Family Health and Epidemiology.
>
> 13. The 2020 NAS Annual Report contains aggregated, de-identified statistics generated using the raw, self-reported data submitted by reporting facilities in the attached form, referred to as the iCMS NAS report form.
> . . . .

14. The iCMS NAS case report form required highly granular, patient-specific information including mothers' and infants' full names, sex, dates of birth, medical tests performed, test results, symptoms, treating physician information, and information about discharge plans.

15. The Bureau of Family Health receives the completed iCMS NAS case report forms containing data for each of these fields.

16. A[s] a result, the NAS dataset in iCMS consists of thousands of individual patient records consisting of detailed biographical, demographic, and medical information gleaned from individual iCMS NAS case report forms.

17. In order to provide the Requester with data that are more granular than what is contained in the 2020 NAS Annual Report while still upholding patient confidentiality, records in the NAS database would have to be completely reconfigured. This would amount to generating new custom dataset that would ultimately omit or redact much of the information that is collected on the NAS case report form and maintained by the Bureau within the Department.

18. To provide the underlying data rather than the requested statewide aggregated data would require the Department to create, compile, or reorganize records in a format that the Bureau does not currently maintain for purposes of carrying out its public health functions.

19. While the Bureau of Family Health uses NAS database to generate Annual Reports that further public health objectives, the instant [R]equest asks the Bureau to generate an additional custom record that provides a greater level of detail than is necessary to meet the Department's public health responsibilities. The aggregated data have already been provided in the form of the 2020 NAS Annual report; providing the underlying facility-submitted data as simply is not possible without disclosing the detailed biographical, demographic and

8

medical information contained in the iCMS NAS case report form.

. . . .

24. The [R]equester now asks that NAS data for 2020 be correlated in a manner that is not presently done, specifically the [R]equester would like each of the three categories of requested information to be further broken down by specific substance(s) to which the infant(s) were exposed.

25. The Bureau does not presently correlate the NAS data in that manner.  An accurate correlation of these categories of information is not currently necessary for purposes of the Department's designated public health response to the reports of NAS within the Commonwealth.  All NAS probable and confirmed cases reported to the Bureau were exposed to an opioid, barbiturate, benzodiazepine, or some combination of the same, consistent with the Department's NAS case definition.  While other substances may be reported on the NAS case report form, exposure to those substances is not further verified.  Another limitation of the data is that data are self-reported by hospitals and information received by the Bureau of Family Health regarding notifications to Child[L]ine and initiation of plans of safe care has not been verified by the Department of Human Services.

26. The requested data stratified by substances of exposure could not be pulled directly from the existing NAS database; the Bureau would have to create a custom query to be run on the reports of all 1,825 probable and confirmed NAS cases reported to the Department with the parameters requested.

27. Providing aggregate results to correlate to the substances to which infants were exposed, as requested in [Items b, c, and e] is also complicated by the fact that frequently more than one substance is reported.

9

Final Determination at 8-10 (quoting Trego Attestation). The OOR found that the Trego Attestation sufficiently demonstrated that information stratified by substances of exposure could not be pulled directly from the Department's existing database, and that the RTKL does not require the Department to create a custom query to aggregate such information that does not otherwise exist. *Id.* at 10. Requester appealed the Final Determination to this Court.

## ISSUES

Requester raises three issues on appeal.[4] First, Requester argues that the OOR erred in concluding that the Department did not already possess the requested data. Second, Requester argues the OOR erred in concluding that a custom query to extract data that already exists in a database constitutes creating a "new record" under Section 705 of the RTKL. Third, Requester asks for an award of attorneys' fees and costs arguing the Department denied its request in bad faith and advanced an unreasonable interpretation of the RTKL.

## RELEVANT LAW

We begin with an overview of the relevant law. The RTKL is designed to promote access to government information and increase the transparency and accountability of government. *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010). Section 102 of the RTKL defines a "record" as

> [i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document,

---

[4] For appeals from determinations made by the OOR involving Commonwealth agencies, our standard of review is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. § 67.102. Section 701 of the RTKL, titled "Access," provides that

[u]nless otherwise provided by law, a public record [] shall be accessible for inspection and duplication in accordance with this act. A record being provided to a requester shall be provided in the medium requested if it exists in that medium; otherwise, it shall be provided in the medium in which it exists.

65 P.S. § 67.701. Section 705 clarifies that "[w]hen responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705.

In interpreting the parameters of Section 705 of the RTKL, this Court's decision in *Department of Environmental Protection v. Cole*, 52 A.3d 541 (Pa. Cmwlth. 2012), is instructive. In *Cole*, Cole sought records from the Department of Environmental Protection (DEP) relating to the rebate application process under the Pennsylvania Sunshine Program – a program that grants rebates to homeowners and small business for solar installations on their property. In the request, Cole noted that "[i]t would be easiest for us, and hopefully you too, to receive this data in an electronic format." *Cole*, 52 A.3d at 544. DEP denied Cole's request on the stated basis that it "does not have the records that [Cole] request[ed] in its possession, under its custody or its control in the format [Cole] requested." *Id*. Despite its denial, DEP, as a courtesy, provided "most of the information" to Cole. *Id.* Cole appealed to the OOR asserting, *inter alia*, that three categories of information included in her original request are collected by DEP in its online rebate application, are subject to

11

disclosure under the RTKL, and were not disclosed in the records DEP provided out of courtesy. *Id.* at 545. Citing Section 705 of the RTKL, DEP responded that it has no obligation to "create a record in response to a request where the data sought existed only in an electronic database and was not organized in the manner requested." *Id.* In support of its position, DEP submitted an affidavit of its employee who oversees the Sunshine Program, who stated that the information Cole requested "was not available in a 'screen shot' or in any series of isolated electronic records, such as reports or spreadsheets, or in hard copies." *Id.* at 546. The OOR issued a final determination granting Cole's appeal, holding, *inter alia*, that DEP did not provide evidence to prove that the requested information did not exist. *Id.* DEP appealed to this Court, asserting that the OOR erred in directing it to produce records that exist only in an electronic database. Again, invoking Section 705 of the RTKL, DEP argued that "it cannot be compelled to troll through raw data and organize it in the manner preferred by the requester." *Id.* at 547. DEP maintained that the OOR erred in focusing on DEP's admission that the requested information exists in a raw form in its databases. *Id.* This Court rejected DEP's argument and affirmed the final determination of the OOR. We explained:

> The information sought by Cole is a "record" because it is information received and retained by [DEP] in conjunction with its "transactions and activities" under the Sunshine Program. [DEP] was able to provide most of the requested information and admitted having the remaining information, i.e., the addresses of rebate recipients. A "record" subject to disclosure under the [RTKL] includes information "regardless of form" and includes information contained in a database.
>
> Requiring [DEP] to provide these "records" does not violate Section 705 of the [RTKL], which excuses an agency from creating a new record or reorganizing

12

> existing records. An agency need only provide the information in the manner in which it currently exists. However, as this Court reasoned persuasively in *Gingrich v. Pennsylvania Game Commission* (Pa. Cmwlth., No. 1254 C.D. 2011, filed January 12, 2012), drawing information from a database does not constitute creating a record under the [RTKL].

*Id.* (internal footnote omitted). This Court concluded that Cole did not request the creation of a record or a unique format, but merely noted that it would be most convenient to provide the information electronically. *Id.* at 548. Thus, the Department was required to provide Cole with the requested information, but only in the format in which it was already available. *Id.*

As cited in *Cole*, this Court's opinion in *Gingrich*, although unreported, is of persuasive value in interpreting Section 705.[5] There, Gingrich requested information from the Pennsylvania Game Commission (Commission) relating to deer harvest and habitat and financial information. Specifically, Gingrich sought "supporting data for summary data shown in [the Commission's] Annual Financial Reports or information/records in [the Commission's] Deer Harvest Data Base." *Gingrich*, slip op. at 2. Gingrich's request stated that although he "suggested reporting formats, they are not required." *Id.* This Court held that suggesting a potential format in which to present the requested information is not an improper request to create a new record. We explained that an agency can be required to draw information from a database, with the limitation that the information must be drawn in formats readily available to the agency. In other words, where requested information exists in a database, Section 705 of the RTKL does not shield its release; it must be provided in the manner in which it currently exists.

---

[5] *See* Commonwealth Court Internal Operating Procedure Section 414, 210 Pa. Code § 69.414 (unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value, but not as binding precedent).

In contrast, this Court has also held that when information is not readily available in the form requested, the RTKL protects an agency from having to produce a new record, and "precludes a requester from being able to []shanghai[] government employees to create a record when one does not exist and take them away from carrying out their normal responsibilities." *Pennsylvania State Police v. McGill*, 83 A.3d 476, 481 (Pa. Cmwlth. 2014). In *McGill*, the requester sought information regarding municipal police officers that received certain training but asked that information regarding undercover or covert officers be redacted. *Id.* at 477. This Court found that to obtain the information necessary to comply with the request and ensure that confidential information is not disclosed, the Pennsylvania State Police (PSP) could not simply examine and compile information already in its possession but would have to coordinate with over 1,000 municipal law enforcement agencies throughout the Commonwealth. Accordingly, PSP was not required to respond to the request, as it would require the creation of a new record in contravention of Section 705 of the RTKL.

## PARTIES' ARGUMENTS

With this background in mind, we turn to the parties' arguments.

*Requester's Arguments*

Requester argues that the OOR fundamentally misapplied this Court's longstanding precedent that retrieving responsive information from a database does not run afoul of Section 705 of the RTKL. It argues that since this Court's decision in *Cole*, the Court has focused its Section 705 analysis on whether the requested data already exists. Requester argues that here, the Department has admitted that its iCMS database already contains the requested NAS data. Pointing to the Trego Attestation, Requester argues that Ms. Trego attested that the 2020 NAS Report is

14

created by analyzing self-reported data submitted by reporting facilities on the iCMS NAS case report form (Case Report Form), a blank copy of which was attached to the Trego Attestation as Exhibit A. R.R. 090a-093a. Requester notes that the Case Report Form contains a dropdown field to indicate: (1) whether laboratory testing of neonate for substance exposure was performed, and if so, which drug(s) did the infant test positive for; (2) whether a notification was made to ChildLine; (3) whether a plan of self care was initiated; and (4) whether the infant was discharged. *Id.* Requester argues the iCMS database that collects the Case Report Forms contains the precise data requested, and these data points can be pulled directly from the existing database. Despite the Department's admission that the requested data exists, Requester argues the Department was nevertheless excused from producing it on the erroneous grounds that running a "custom query" was tantamount to "generating a custom dataset" and creating a new record.

To that end, Requester again points to the Trego Attestation wherein Ms. Trego stated that to prepare the 2020 NAS Report, "the Bureau of Family Health creates and runs a customized data program to extract and analyze the raw data, the results of which are extensively reviewed, analyzed, confirmed, and formatted before being publicly released." Trego Attestation ¶ 23; R.R. 087a. Requester submits that just as it does to create the annual NAS reports, the Department could fulfill Requester's Request by "creating a custom query of the 1,825 probable and confirmed NAS cases reported to the Department with the parameters requested." Requester's Brief at 19 (quoting Trego Attestation ¶ 26; R.R. 088a). Requester argues that "[a] query – even a 'custom' one – is the essence of 'drawing information from a database,' which this Court has long held 'does not constitute creating a record under the [RTKL].'" Requester's Brief at 22.

15

Requester argues that the OOR's conclusion that a custom query creates a new record – as opposed to merely drawing existing information from a database – is fundamentally incompatible with this Court's decision in *Cole* and must be reversed. It asks this Court to "take this opportunity to refine and crystallize what has been clear for more than a decade: a database query to retrieve existing data does not 'create a record' for purposes of Section 705 of the RTKL." Requester's Brief at 17.

Finally, Requester seeks attorneys' fees and costs pursuant to Section 1304 of the RTKL, 65 P.S. § 67.1304, asserting the Department denied its request in bad faith based upon an unreasonable interpretation of this Court's precedent interpreting the RTKL.

*Department's Arguments*

The Department responds Requester's position sidesteps the factual record developed before the OOR and ignores the simple fact that responsive records simply do not exist. The Department highlights that the Request at issue is specific in that it seeks "*aggregate data*" regarding NAS cases. The Department provided the only record available, the 2020 NAS Annual Report; and proved through the Hoppes and Trego Attestations that no other *aggregate* data exists. While Requester baldly rejects that fact established through the Attestations, it has failed to provide any factual evidence in support of its position. To the extent Requester asserts the Case Report Forms contain drop-down data fields which can, in turn, be pulled from the Department's iCMS database, the Department submits that such contention is factually inaccurate and based solely upon speculation. Describing the process it follows to create annual NAS reports, the Department maintains that it has to extract raw data from the Case Report Forms, resulting in the creation of a new record. The

16

forms in and of themselves do not create a searchable database, as Requester implies.[6]  As specifically stated in the Trego Attestation and credited by the OOR, the Department has consistently stated that the requested data could not be pulled directly from the existing iCMS database, and responding to the items in the Request would require a custom query, which in turn, creates a new record.

Addressing this Court's precedent, the Department argues that Requester's reliance on *Cole* and *Gingrich* is misplaced.  Those cases reference data that exists in a database, "not data that exists on a form that needs to have additional calculations performed in order to create the record they seek."  Department's Brief at 18. The RTKL is clear that an agency is not required to create a record that does not otherwise exist. In sum, the Department argues that it provided responsive records in the form available, the 2020 NAS Report.  This response satisfied all but one of Requester's itemized requests, which seeks a data correlation not presently performed by the Department and not currently in existence.

Finally, the Department asserts that Requester's request for attorneys' fees and costs is baseless.

## ANALYSIS

As exemplified by this Court's analysis in *Cole* and *Gingrich*, the first issue in determining whether a response to a request requires the creation of a new record under Section 705 is whether the responsive record exists.  Here, that requires the Court to determine if the requested information exists in a database.  If it is determined that such responsive records exist, the Court must then determine

---

[6] The Department also notes that in prior litigation before the OOR, Requester sought the disclosure of NAS Case Report Forms from the Department and was denied based on the conclusion that the forms were confidential under the Disease Prevention and Control Law of 1995, Act of April 23, 1956, P.L. (1955) 1510, *as amended*, 35 P.S. §§ 521.1-521.21.  R.R. 099a-109a.  Requester did not appeal the OOR's determination.

17

whether using a "custom query" to extract data from the database constitutes a new record for purposes of the RTKL. This second question is complicated by the electronic nature of modern record-keeping. As explained *supra*, we have held that merely extracting records from an electronic database is not tantamount to the creation of a new record. *Cole*. We have, however, long held that an agency is not required to manipulate or reorganize existing data when responding to a records request. *Id.* For purposes of this matter, we must determine which side of the line running a "custom query" falls on. In other words, is a custom query of an existing database merely extracting data? Or is running a custom query the equivalent of manipulating and reorganizing existing data to create a new record?

As to the first question, this Court concludes that the Department has conceded that the requested information exists in the iCMS database. In her attestation, Ms. Trego stated that "[b]eginning on January 1, 2020, NAS case report data have been reported to the Bureau of Family Health, where case data are integrated with newborn screening data reported to the Bureau, in an electronic database known as the internet case management system (iCMS)." Trego Attestation ¶ 11, R.R. 085a. There is no question that the iCMS database exists.

We must next address whether the use of a custom query to extract data from the iCMS database constitutes the creation of a new record. In her attestation, Ms. Trego explained that "[a]ny information beyond the NAS Annual Report, specifically including the data underlying the reports that are maintained by the Department (NAS Database) are not aggregated but rather consist of individual case reports of NAS." Trego Attestation ¶ 8, R.R. 084a. In regard to the database, she further explained:

18

16. As a result, the NAS dataset in iCMS consists of thousands of individual patient records consisting of detailed biographical, demographic, and medical information gleaned from individual iCMS NAS case report forms.

17. In order to provide the Requester with data that are [*sic*] more granular than what is contained in the 2020 NAS Annual Report while still upholding patient confidentiality, records in the NAS database would have to be completely reconfigured. This would amount to generating new custom dataset that would ultimately omit or redact much of the information that is collected on the NAS case report form and maintained by the Bureau within the Department.

18. To provide the underlying data rather than the requested statewide aggregated data would require the Department to create, compile, or reorganize records in a format that the Bureau does not currently maintain for purposes of carrying out its public health functions.

*Id.* ¶¶ 16-18, R.R. 085a-086a. Ms. Trego's attestation establishes that the iCMS database categorizes and stores the information received from the Case Report Forms by individual patient. The Request at issue here seeks aggregate data. While the Department manipulates and compiles data from the iCMS in creating the annual NAS reports, it established that it does not query the database, *i.e.*, the individual patient forms, for the specific items sought in the Request, and aggregate data reflecting those specific categories does not exist.

On these facts, the Court concludes that running a custom query through the iCMS database is not, as Requester implies, a mere extraction of information from an electronic database, but rather would require the Department to create a new record that does not otherwise exist in violation of Section 705 of the RTKL. The facts present here are distinct from those in *Cole*, where this Court directed the disclosure of information "but only in the form in which it is available."

19

*Cole*, 52 A.3d at 541. Here, the Department established that aggregate data of the information sought in the Request is not in any available form and would require a custom query to manipulate existing records and compile it in a new form. On these specific facts, we hold that requiring the Department to run a custom query through the iCMS database is tantamount to the creation of a new record under Section 705 of the RTKL, and thus not required.[7]

## CONCLUSION

For these reasons, the OOR's Final Determination is affirmed.

_____
MATTHEW S. WOLF, Judge

---

[7] Based on this disposition, Requester is not entitled to attorneys' fees and costs. 65 P.S. § 67.1304(a).

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Center for Investigative Reporting    :
d/b/a Reveal,    :
            Petitioner    :
    :
       v.    :   No. 227 C.D. 2023
    :
Pennsylvania Department of Health    :
(Office of Open Records),    :
           Respondent    :

# **O R D E R**

AND NOW, this 5th day of June 2024, the February 6, 2023 Final Determination of the Office of Open Records is AFFIRMED.

_____
MATTHEW S. WOLF, Judge