**PENNSYLVANIA STATE POLICE, Petitioner**

v.

**Michelle GROVE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 23, 2015.

Decided July 7, 2015.

Christopher Herrington, Assistant Counsel, Harrisburg, for petitioner.

BEFORE: RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge JAMES GARDNER COLINS.

This matter is a petition for review filed by the Pennsylvania State Police (PSP) appealing a final determination of the Office of Open Records (OOR), which ordered PSP to provide to Michelle Grove (Requester) copies of two recordings of PSP troopers at the scene of a traffic accident made by video recording equipment in PSP vehicles. The primary issue presented by this appeal is whether such video recordings of interaction between law enforcement officers and members of the public in a public place are exempt from disclosure as criminal investigative records under the Right–to–Know Law (RTKL)[1] and the Criminal History Record Information Act (CHRIA).[2] We conclude that such recordings are not exempt from disclosure. We therefore affirm the OOR's order requiring PSP to provide a copy of one of the video recordings, which contains no audio component, but reverse and remand with respect to the second recording to permit PSP to make limited redactions of exempt information from the audio component of that recording.

On March 24, 2014, Requester submitted to PSP a request under the RTKL seeking "a copy of the police report and any video/audio taken by the officers" at the site of a two-vehicle accident on State Route 144 in Potter Township. (Record Item (R. Item) 1, RTKL Appeal, Reproduced Record (R.R.) at 1a, 8a; R. Item 5, OOR Final Determination at 1.) On May 1, 2014, after extending its deadline to respond pursuant to Section 902 of the RTKL, 65 P.S. § 67.902, PSP partially denied the Request, providing the Public Information Release Report of the accident, but with-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. 18 Pa.C.S. §§ 9101–9183.

holding other records on the ground that they were exempt from disclosure as criminal investigative records under Section 708(b)(16) of the RTKL, 65 P.S. § 67.708(b)(16), and CHRIA. (R. Item 1, RTKL Appeal, R.R. at 4a–9a.) In this response, PSP also asserted that video and audio recordings were exempt as records "pertaining to audio recordings, telephone or radio transmissions received by emergency dispatch personnel, including 911 recordings," under Section 708(b)(18)(i) of the RTKL, 65 P.S. § 67.708(b)(18)(i). (*Id.*, R.R. at 6a.) With its response, PSP provided a verification of its Deputy Agency Open Records Officer that gave no description of the responsive video and audio recordings or the nature or purpose of such recordings and merely stated the conclusion that such recordings qualified for exemption under Section 708(b)(18)(i). (*Id.*, R.R. at 6a–7a; R. Item 3, PSP Submission to OOR, R.R. at 10a–11a.)

Requester timely appealed to OOR PSP's denial of her request for audio and video recordings, including recordings made by "dash cams and body recorders." (R. Item 1, RTKL Appeal, R.R. at 16a–17a.) PSP submitted a letter memorandum of counsel to OOR in response to this appeal, in which it argued that under past OOR decisions, recordings made by video recorders in PSP vehicles are criminal investigative records exempt under Section 708(b)(16) of the RTKL. (R. Item 3, PSP Submission to OOR, R.R. at 18a–19a.) In this memorandum, PSP also relied on the verification of its Deputy Agency Open Records Officer that it had provided in its response to Requester, but submitted no other affidavit, verification or other evidence. (*Id.*) On June 17, 2014, OOR issued a final determination requiring PSP to provide copies of all responsive recordings to Requester, concluding that the verification submitted by PSP was insufficient to show that the recordings were of transmissions received by emergency dispatch personnel and that PSP had not submitted any evidence that the recordings were investigative records. (R. Item 5, OOR Final Determination at 4–5.)

On appeal to this Court, PSP does not contend that the recordings at issue are transmissions or recordings received by emergency dispatch personnel and does not claim any exemption from disclosure under Section 708(b)(18)(i) of the RTKL. Rather, PSP argues that its vehicle video recordings are exempt under Section 708(b)(16) of the RTKL and Section 9106(c)(4) of CHRIA as criminal investigative records. PSP has also filed an application to supplement the record, seeking to submit an affidavit of its Open Records Officer William Rozier (the Rozier Affidavit) as additional evidence for this Court's consideration.

 We must first consider whether PSP's supplementation of the record should be allowed. Under the RTKL, this Court exercises plenary, *de novo* review of OOR determinations involving Commonwealth agencies such as PSP. *Bowling v. Office of Open Records,* 621 Pa. 133, 75 A.3d 453, 477 (2013); *Hunsicker v. Pennsylvania State Police,* 93 A.3d 911, 913 n. 7 (Pa.Cmwlth.2014). Where the record before OOR is inadequate to determine whether requested material is exempt from disclosure, this Court has discretion to permit a party to enlarge the record on appeal and to consider additional evidence. *Bowling,* 75 A.3d at 476; *Carey v. Pennsylvania Department of Corrections,* 61 A.3d 367, 371 n. 3, 377 (Pa.Cmwlth.2013); *Department of Environmental Protection v. Cole,* 52 A.3d 541, 546 n. 6, 549–50 & n. 14, 552 (Pa.Cmwlth.2012). Consideration of additional evidence is particularly appropriate where the requested items involve law enforcement or public security

issues and the OOR record contains no information on their nature and content. *Carey,* 61 A.3d at 377.

██ Here, the OOR record is devoid of any information as to what video or audio recordings are at issue here, what they contain, or the reasons such recordings are made. The Rozier Affidavit that PSP seeks to submit addresses these matters and supplies information concerning the responsive recordings and PSP's policies concerning and reasons for making such recordings. (Rozier Affidavit ¶¶ 9–19, attached to PSP Application to Supplement Record as Ex. 1.) An agency is not entitled to ignore its burden to show exemption from disclosure before OOR and rely on supplementation of the record in this Court to avoid the consequences of that conduct. *See Pennsylvania Turnpike Commission v. Murphy,* 25 A.3d 1294, 1297–98 (Pa.Cmwlth.2011) (denying supplementation of record on appeal as an attempt to obtain "a proverbial second bite of the apple" where there was no apparent reason for the failure to submit the additional affidavits to OOR). That, however, is not the case here. Based on prior OOR decisions that OOR had not yet overruled, *Otto v. Pennsylvania State Police,* 2014 WL 97152 (Pa.Off.Open Rec. Docket No. AP 2013–2323, filed Jan. 3, 2014), and *Keller v. Pennsylvania State Police,* 2014 WL 1284524 (Pa.Off.Open Rec. Docket No. AP 2014–0241, filed Mar. 13, 2014), PSP had reason to believe that evidence concerning the nature and contents of its police vehicle recordings was unnecessary to OOR's evaluation of the appeal. Because the Rozier Affidavit provides facts necessary to a proper evaluation of whether the recordings at issue are investigative records and the absence of this evidence from the OOR record does not appear to be a result of agency disregard of its obligation to submit evidence to OOR, consideration of this additional evidence is appropriate. *Carey,* 61 A.3d at 377; *Cole,* 52 A.3d at 552. We therefore grant PSP's application to supplement the record, and we consider the Rozier Affidavit in addressing the merits of this appeal.

The Rozier Affidavit establishes that there are two PSP video recordings responsive to Requester's RTKL request. (Rozier Affidavit ¶ 9.) These videos, referred to by PSP as "mobile vehicle recordings" (MVRs), were recorded by video recording equipment in the vehicles of the two PSP troopers who responded to the accident scene. (*Id.* ¶¶ 10–11.) Trooper Vanorden was the first officer to arrive at the scene, and the MVR from his vehicle (the Vanorden MVR) contains no audio component. (*Id.* ¶ 10.) According to the Rozier Affidavit, the Vanorden MVR shows the trooper speaking with the two drivers involved in the accident and directing one of the drivers to move his vehicle. (*Id.* ¶ 10.) The second officer to arrive at the scene, Trooper Thomas, is the author of the incident report, and the MVR from his vehicle (the Thomas MVR) contains both video and audio. (*Id.* ¶ 11; R. Item 1, RTKL Appeal, R.R. at 8a.) According to the Rozier Affidavit, the Thomas MVR includes interviews of the two drivers and bystanders concerning the accident. (Rozier Affidavit ¶¶ 11, 19.)

The Rozier Affidavit also sets forth how the recording system is operated and PSP's guidelines for its use. The MVR equipment is activated and begins recording when a trooper turns on his emergency lights or siren. (Rozier Affidavit ¶ 14.) PSP's internal field regulations provide that MVR equipment is to be used both to document investigative work and also to record "[t]raffic and criminal enforcement stops," "[i]n-progress Vehicle and Crimes Code violations," "[p]olice pursuits," "[p]atrol vehicle travel and movements when

emergency lights and/or siren are activated," "[p]risoner transports," and "[a]ny other incident the member deems appropriate while acting in the performance of their official duties." (*Id.* ¶¶ 15–16.)

 Under the RTKL, information documenting the actions of a Commonwealth or local agency that is in the agency's possession is presumed to be a public record unless it is (1) exempt under Section 708 of the RTKL; (2) protected by a privilege; or (3) exempt from disclosure under another federal or state law or regulation or judicial order. Sections 102 and 305 of the RTKL, 65 P.S. §§ 67.102, 67.305; *Pennsylvania State Police v. McGill*, 83 A.3d 476, 479 (Pa.Cmwlth.2014) (*en banc*); *Carey*, 61 A.3d at 371–72. Where a government agency claims that a requested record is exempt from public access, the agency has the burden of proving by a preponderance of evidence that the exemption asserted applies. 65 P.S. § 67.708(a)(1); *Bowling*, 75 A.3d at 457, 468–69; *Levy v. Senate of Pennsylvania*, 619 Pa. 586, 65 A.3d 361, 374, 381 (2013); *McGill*, 83 A.3d at 479; *Carey*, 61 A.3d at

372–73. The RTKL is designed to promote access to government information in order to prohibit secrets, permit scrutiny of the actions of public officials, and make public officials accountable for their actions. *Levy*, 65 A.3d at 381; *McGill*, 83 A.3d at 479; *Cole*, 52 A.3d at 547. Exemptions from disclosure must therefore be narrowly construed. *McGill*, 83 A.3d at 479; *Carey*, 61 A.3d at 373.

 As noted above, PSP argues that both MVRs are exempt from disclosure under Section 708(b)(16) of the RTKL and Section 9106(c)(4) of CHRIA. Section 708(b)(16) of the RTKL exempts from disclosure:

A record of an agency relating to or resulting in a criminal investigation, including:

\* \* \*

(ii) Investigative materials, notes, correspondence, videos and reports.

65 P.S. § 67.708(b)(16).[3] Section 9106(c)(4) of CHRIA provides:

*Investigative* and treatment *information shall not be disseminated* to any depart-

---

3. Section 708(b)(16) provides that "the following are exempt from access" under the RTKL:

(16) A record of an agency relating to or resulting in a criminal investigation, including:
(i) Complaints of potential criminal conduct other than a private criminal complaint.
(ii) Investigative materials, notes, correspondence, videos and reports.
(iii) A record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised.
(iv) A record that includes information made confidential by law or court order.
(v) Victim information, including any information that would jeopardize the safety of the victim.
(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.
(B) Deprive a person of the right to a fair trial or an impartial adjudication.
(C) Impair the ability to locate a defendant or codefendant.
(D) Hinder an agency's ability to secure an arrest, prosecution or conviction.
(E) Endanger the life or physical safety of an individual.
This paragraph shall not apply to information contained in a police blotter as defined in 18 Pa.C.S. § 9102 (relating to definitions) and utilized or maintained by the Pennsylvania State Police, local, campus, transit or port authority police department or other law enforcement agency or in a traffic report except as provided under 75 Pa.C.S. § 3754(b) (relating to accident prevention investigations).
65 P.S. § 67.708(b)(16).

ment, agency or individual *unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties,* and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa.C.S. § 9106(c)(4) (emphasis added). CHRIA defines "[i]nvestigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." 18 Pa.C.S. § 9102. The RTKL does not define what constitutes "investigative" videos and materials.

■ PSP argues that both MVRs are criminal investigative records because the motor vehicle accident to which they relate resulted in traffic citations, which are summary criminal offenses, and because one of the troopers investigated the accident before issuing the citations. We do not agree that these facts make the recordings investigative or exempt them as records "relating to or resulting in a criminal investigation." The mere fact that a record has some connection to a criminal proceeding does not automatically exempt it under Section 708(b)(16) of the RTKL or CHRIA. *Coley v. Philadelphia District Attorney's Office,* 77 A.3d 694, 697–98 (Pa. Cmwlth.2013) (while witness statements were exempt as investigative under Section 708(b)(16) and CHRIA, immunity agreement with witness was not exempt unless its contents were shown to be investigative information). The types of records that we have held protected from RTKL disclosure under Section 708(b)(16) and CHRIA as investigative are records created to report on a criminal investigation or set forth or document evidence in a criminal investigation or steps carried out in a criminal investigation. *See Hunsicker,* 93 A.3d at 912 (report of death investigation); *Barros v. Martin,* 92 A.3d 1243, 1245–46, 1249–50 (Pa.Cmwlth.2014) (criminal complaint file, confession, polygraph test, forensic lab reports, internal police review documents and witness statements); *Coley,* 77 A.3d at 697 (witness statements); *Pennsylvania State Police v. Office of Open Records,* 5 A.3d 473, 479 (Pa.Cmwlth.2010) (police incident report setting forth notes of witness interviews and reporting whether investigative tasks had been carried out); *Mitchell v. Office of Open Records,* 997 A.2d 1262, 1263, 1266 (Pa.Cmwlth.2010) (memorandum setting forth facts concerning execution of search warrant).

■ In contrast, PSP's evidence demonstrates that the MVRs are created to document troopers' performance of their duties in responding to emergencies and in their interactions with members of the public, not merely or primarily to document, assemble or report on evidence of a crime or possible crime. The MVR equipment is activated when an officer's siren or emergency lights are turned on, a noninvestigative event. (Rozier Affidavit ¶ 14.) Moreover, PSP uses MVRs to document the entire interaction and actions of the trooper, including actions which have no investigative content, such as directions to motorists in a traffic stop or at an accident scene, police pursuits, and prisoner transports. (*Id.* ¶¶ 10, 16.) MVRs themselves are therefore not investigative material or videos, investigative information, or records relating or resulting in a criminal investigation exempt from disclosure under Section 708(b)(16) of the RTKL or CHRIA. Indeed, as documentation of law enforcement officers' conduct in carrying out their duties, MVRs are records at the core to the RTKL's purpose of en-

abling the public to "scrutinize the actions of public officials, and make public officials accountable for their actions." *McGill*, 83 A.3d at 479.[4]

▌ PSP has shown that MVRs can contain witness interviews, interrogations, intoxication testing and other investigative work, and that a portion of one of the two MVRs here, the Thomas MVR, includes witness interviews. (Rozier Affidavit ¶¶ 11, 16.) We agree that such portions of an MVR are investigative information exempt from disclosure by Section 708(b)(16) of the RTKL and CHRIA. The fact that parts of a public record contain exempt information does not, however, immunize the non-exempt portions from disclosure; rather, in such circumstances, the agency must produce the record with the exempt information redacted. Section 706 of the RTKL, 65 P.S. § 67.706; *Advancement Project v. Pennsylvania Department of Transportation*, 60 A.3d 891, 894 (Pa. Cmwlth.2013). Section 706 of the RTKL provides:

> If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access

to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted. Information which an agency redacts in accordance with this subsection shall be deemed a denial under Chapter 9.

65 P.S. § 67.706. *See also Advancement Project*, 60 A.3d at 894 ("an agency cannot deny access to a record that contains non-disclosable information if that information can be redacted"). Therefore, PSP is entitled to redact the portions of MVRs that contain actual investigative information, such as witness interviews, but may not withhold an entire MVR on the basis that part of it is investigative.

Applying these principles to the two MVRs at issue here, we conclude that PSP has not shown that the Vanorden MVR has any investigative content. This MVR has only a video component and the Rozier Affidavit describes it as depicting the trooper "speaking with the operators of the vehicles," "observing the crash scene and the damage to the vehicles," and "directing the operator of the truck involved in the accident to move his vehicle to a safer area." (Rozier Affidavit ¶ 10.) PSP does not contend that this MVR shows any measurements, collection of evidence, physical inspection or analysis of what the accident scene showed. PSP has therefore not shown that this MVR contains any investigative information that it could be entitled to redact. Accordingly, OOR did not err in ordering PSP to provide a copy of this MVR in its entirety to Requester.

PSP has shown that some portions of the Thomas MVR contain investigative

---

4. The fact that OOR held that MVRs are investigative records in its *Otto* and *Keller* decisions, which it has since overruled, is not a basis for finding MVRs exempt from disclosure. OOR decisions have no precedential

value in this Court, *Scott v. Delaware Valley Regional Planning Commission*, 56 A.3d 40, 44 (Pa.Cmwlth.2012), and we do not find those decisions persuasive.

records and information. Unlike the Vanorden MVR, this MVR contains an audio recording that the Rozier Affidavit describes as including the trooper "interviewing the operators of the vehicles" and having "an extensive conversation with the operator of the truck concerning the status of his truck classification, with assistance from Trooper Vanorden via the telephone." (Rozier Affidavit ¶ 11.) PSP has not provided any evidence that the video depiction of these conversations contains any information as to their contents or that the video component of this MVR contains any other information that is investigative in nature. The audio of those conversations, however, are recordings of witness interviews. (*Id.*). Because those recorded interviews are part of an investigation of the accident that included possible criminal charges, they are records "relating to or resulting in a criminal investigation" and "investigative materials" exempt from disclosure under Section 708(b)(16) of the RTKL and "investigative information" under CHRIA. Accordingly, PSP must be permitted to redact the witness interviews from the audio component of the Thomas MVR prior to providing that MVR to Requester.

 PSP also argues that disclosure of MVRs under the RTKL could violate the Wiretapping and Electronic Surveillance Control Act (Wiretap Act).[5] PSP did not raise this argument before OOR. Ordinarily, failure to raise a ground for non-disclosure before OOR constitutes a waiver of that issue. *Levy v. Senate of Pennsylvania*, 94 A.3d 436, 441–42 (Pa. Cmwlth.2014) (although agency failure to raise an exemption in its denial of a request does not waive its right to argue that ground, grounds for nondisclosure not raised before the fact-finder in the appeal from its denial are waived). An agency, however, cannot waive third parties' privacy rights. *Cole*, 52 A.3d at 551. We therefore address this belatedly raised issue.

 As PSP concedes, the Wiretap Act restricts audio and other recordings of the contents of oral communications and electronic and wire communications, not video recordings that do not capture the content of any oral communication. 18 Pa.C.S. §§ 5702, 5703. The Wiretap Act is thus inapplicable to both the Vanorden MVR and the video portion of the Thomas MVR and cannot constitute grounds denying access to those video recordings. In addition, because these MVRs are recordings of events in a public place, disclosure of their video components does not raise issues of infringement of individuals' reasonable expectations of privacy. *Tagouma v. Investigative Consultant Services, Inc.*, 4 A.3d 170, 177–78 (Pa.Super.2010).

 While the audio portion of the Thomas MVR does include the contents of conversations, that fact by itself does not make it subject to the Wiretap Act. The Wiretap Act does not apply to non-wire oral communications where the speaker has notice that the conversation may be recorded. 18 Pa.C.S. § 5702 (defining "[o]ral communication" as "[A]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation"); *Commonwealth v. Henlen*, 522 Pa. 514, 564 A.2d 905, 906–07 (1989); *Gunderman v. Unemployment Compensation Board of Review*, 95 Pa.Cmwlth. 479, 505 A.2d 1112, 1115 (1986). Because the troopers clearly had reason to believe that they were being recorded by their MVR equipment, audio recordings capturing their communications

5. 18 Pa.C.S. §§ 5701–5782.

are not protected from disclosure by the Wiretap Act. None of the troopers' communications therefore can be redacted from the Thomas MVR audio based on the Wiretap Act.

With respect to the drivers and any other private citizens whose communications may have been recorded by the audio portion of the Thomas MVR, the record is unclear as to whether they had notice of the recording or any expectation that the interview was not subject to recording. We therefore do not rule on whether the audio portions of the Thomas MVR recording their utterances are subject to the Wiretap Act. On remand, if PSP concludes that the drivers or any other private citizens who were recorded had no notice of the recording or reason to believe they were being recorded, it may redact their utterances from the audio portion of the Thomas MVR prior to providing it to Requester. If PSP makes such redactions and Requester believes that the communications are not protected by the Wiretap Act, she may appeal those redactions to OOR.

For the foregoing reasons, we affirm OOR's final determination to the extent that it concluded that the video and audio recordings at issue are public records subject to disclosure under the RTKL and ordered PSP to provide Requester with unredacted copies of the Vanorden MVR and video component of the Thomas MVR. We reverse OOR's decision to the extent that it required PSP to provide the audio component of the Thomas MVR without redaction and remand this matter to permit PSP, before providing that MVR to Requester, to redact from its audio component witness interviews and utterances of private citizens who had no notice of the recording.

### ORDER

AND NOW, this 7th day of July, 2015, the Application of Petitioner Pennsylvania State Police (PSP) to Supplement the Record is GRANTED. The final determination of the Office of Open Records (OOR) is AFFIRMED insofar as it held that the requested video and audio recordings at issue are public records and insofar as it ordered PSP to provide an unredacted copy to Respondent of the requested video recording made by Trooper Vanorden. The final determination of the OOR is REVERSED insofar as it ordered PSP to provide an unredacted copy to Respondent of the requested video and audio recording made by Trooper Thomas. This matter is REMANDED to OOR with instructions to permit PSP to redact the portions of the audio component of the Thomas recording that contain witness interviews and utterances of private citizens who had no notice of the recording prior to providing that recording to Respondent.

Jurisdiction relinquished.