[J-93-2016] [MO: Dougherty, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | | |
|---|---|---|
| PENNSYLVANIA STATE POLICE, | : | No. 25 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated July 7, |
| | : | 2015 at No. 1146 CD 2014 affirming in |
| v. | : | part, reversing in part and remanding in |
| | : | part the Final Determination of the |
| | : | Office of Open Records at No. AP 2014- |
| MICHELLE GROVE, | : | 0828 dated June 17, 2014. |
| | : | |
| Appellee | : | ARGUED:  September 14, 2016 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE MUNDY**                                        **DECIDED:  June 20, 2017**

The Majority provides an admirable exposition of the facts, arguments and guiding legal principles we confront in this case, and I agree with many of its conclusions.  Specifically, I join Parts I, II-A, III and IV of the Majority Opinion.  However, I diverge from the Majority's analysis in Part II-B where it accepts the Commonwealth Court's video/audio distinction in determining whether the subject mobile vehicle recordings (MVRs) are records "relating to or resulting in a criminal investigation," or "investigative information" under the Right to Know Law (RTKL) and the Criminal History Record Information Act (CHRIA), respectively.  65 P.S. § 67.708(b)(16)(ii); 18 Pa.C.S. § 9106(c)(4).

I agree with the Majority on the following preliminary determinations.  The MVRs constitute "records" for the purpose of RTKL and CHRIA.  Majority Opinion at 24.  The Pennsylvania State Police (PSP), as the party asserting an exception to the general rule of disclosure, bears the burden to show the exception applies by a preponderance of

the evidence, and that exceptions are to be narrowly construed. *Id.* I accept that the term "criminal investigation," not being otherwise defined in the RTKL, takes on its "plain meaning and common usage." *Id.* at 25.[1] I agree with the conclusion that, because there are instances where an MVR may not relate to a criminal investigation, adoption of a per se rule for an exception to disclosure is not appropriate.[2] *Id.* at 27. Therefore, I agree that the determination of whether the criminal-investigation exception applies to a particular MVR must be made on a case-by-case basis. *Id.* at 28.

The Commonwealth Court noted that it had previously held that "records created to report on a criminal investigation or set forth or document evidence in a criminal investigation or steps carried out in a criminal investigation" are exempt from disclosure under the RTKL and CHRIA. *Pennsylvania State Police v. Grove*, 119 A.3d 1102, 1108 (Pa. Cmwlth. 2015) (citing cases). The Commonwealth Court, after reviewing the PSP's account of the contents of the MVRs in this case, determined that portions and aspects

---

[1] To the definitions of "criminal" and "investigation" supplied by the Majority, I add the meaning of "related" as "connected by reason of an established or discoverable relation." *Related Definition*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriamwebster.com/dictionary/related (last visited Mar. 28, 2017).

[2] While I reach the same conclusion, I do so on a narrower basis than the Commonwealth Court and the Majority. I disagree with the Commonwealth Court that the Rozier Affidavit supports the conclusion that "MVRs are created to document troopers' performance of their duties in responding to emergencies and in their interactions with members of the public, not merely or primarily to document, assemble or report on evidence of a crime or possible crime." *Grove*, 119 A.3d at 1108. To the contrary, the Affidavit does not speak to a "primary" purpose. Further, the fact that the MVRs are automatically engaged upon activation of the vehicle's emergency lights does not establish such purpose. I deem some of the examples recited by the Commonwealth Court of non-investigative uses of an MVR as equally supporting an investigative function. Nevertheless, there may be instances where emergency lights are activated and the MVR does not relate to a criminal investigation, such as where a police officer is directing traffic at an intersection during a power outage, or where a natural obstacle is blocking traffic. Such examples preclude the application of a per se rule in this case.

of the MVRs related to a criminal investigation and portions did not. It reasoned as follows.

> Applying these principles to the two MVRs at issue here, we conclude that PSP has not shown that the Vanorden MVR has any investigative content. This MVR has only a video component and the Rozier Affidavit describes it as depicting the trooper "speaking with the operators of the vehicles," "observing the crash scene and the damage to the vehicles," and "directing the operator of the truck involved in the accident to move his vehicle to a safer area." PSP does not contend that this MVR shows any measurements, collection of evidence, physical inspection or analysis of what the accident scene showed. PSP has therefore not shown that this MVR contains any investigative information that it could be entitled to redact. . . .

> Unlike the Vanorden MVR, this MVR contains an audio recording that the Rozier Affidavit describes as including the trooper "interviewing the operators of the vehicles" and having "an extensive conversation with the operator of the truck concerning the status of his truck classification, with assistance from Trooper Vanorden via the telephone." PSP has not provided any evidence that the video depiction of these conversations contains any information as to their contents or that the video component of this MVR contains any other information that is investigative in nature. The audio of those conversations, however, are recordings of witness interviews. Because those recorded interviews are part of an investigation of the accident that included possible criminal charges, they are records "relating to or resulting in a criminal investigation" and "investigative materials" exempt from disclosure under Section 708(b)(16) of the RTKL and "investigative information" under CHRIA. Accordingly, PSP must be permitted to redact the witness interviews from the audio component of the Thomas MVR prior to providing that MVR to Requester.

*Id.* at 1109-1110 (citations omitted).

The Majority adopts the same reasoning. It observes "[w]ith regard to the MVRs requested by Grove in this case, we must determine whether the video aspects generally depict a systematic inquiry or examination into a potential crime." Majority

Opinion at 26. It concludes "[t]he video depiction presents nothing more than a bystander would observe." *Id.* at 28. The Majority continues that the citations issued in this case were based on the statements and accounts given by the witnesses interviewed by the troopers. *Id.* Thus it concludes "the fact and nature of the Vehicle Code violations could not have been garnered from the video-only aspect of the MVRs." *Id.* Accordingly, it found no error in the Commonwealth Court's holding that the video portion was not related to a criminal investigation and, if the audio portion was redacted, should be released to the requester.

I believe this analysis is flawed and creates additional requirements not inherent in the general meaning of "related to a criminal investigation." First, a criminal investigation will not invariably result in the filing of citations or charges, or the commencement of criminal proceedings. An investigation may well result in a conclusion that no crime has been committed or that a particular subject being investigated is unconnected to the suspected crime. Those inquiries are no less "related" to the investigation than are those yielding information ultimately used in proving an offense. Therefore, it is immaterial to our analysis whether the citations issued in this case ended up being based on statements only or upon additional information such as the configuration of the scene or the observations of the behavior of the participants. Second, the notion that the video portions of the MVRs' witness interviews contain no investigative information is, in my view, unsound. The video may well depict a witness's demeanor, physical condition, and gestures, which give context to the statements provided. As such, they are as related to the inquiry as are the content of the statements.[3] Also, the video may depict "steps carried out in a criminal

---

[3] In certain situations a video portion of a witness interview may present the possibility of interpretation through lip-reading. There is no indications the MVRs in this case were (continued…)

investigation." *See Grove*, 119 A.3d at 1108.[4] That the police did not need this information to file the instant citations is, again, immaterial. Third, the fact that a portion of a police investigation occurs in a public place, such that a "bystander" may observe parts of what occurred, in no way renders a recording of the police activities any less a record related to the investigation.

Having accepted that Troopers Thomas and Vanorden engaged in a criminal investigation upon arriving at the scene of the accident, the MVRs' record of the steps the officers took, the persons they spoke with, and the state of the scene they encountered became a record related to that investigation. The exercise engaged in by the Commonwealth Court and the Majority to determine what was actually used or relied upon from that record to file the instant citations creates an additional result-related element to the language of Section 67.708(b)(16)(ii)'s exception. I discern nothing in the plain language of Section 67.708(b)(16) that makes the question of

_____

(…continued)
sufficiently clear to make this an issue, but it does illustrate the artificial nature of the video/audio distinction relied on by the Commonwealth Court and the Majority.

[4] The Majority suggests these examples, illustrating the unsound logic of divorcing the video portion of an MVR from the audio, were not shown to exist here in the record presented by the PSP. Majority Opinion at 31 n.19. However, Rozier, in his affidavit, did aver the following. "The [first] MVR depicts Trooper Vanorden speaking with the operators of the vehicles. Trooper Vanorden can be seen observing the crash scene and the damage to the vehicles. . . . The second MVR . . . depicts Trooper Thomas interviewing the operators of the vehicles." PSP Ex. 1 at 2. More importantly, the suggestion misses the fundamental point of my dissent. It is immaterial to the issue of relatedness to the admitted criminal investigation whether these video depictions in fact were used or relied on by, or even helpful to the police in their decisions connected to the investigation.

whether a record is related to a criminal investigation dependent on the results of that investigation.

For these reasons I conclude that the MVRs at issue in this case are, in their entirety, related to the criminal investigation conducted by the troopers at the accident scene, and are not amenable to redaction. Accordingly, I would reverse the order of the Commonwealth Court to the extent it directed release of the redacted video portions of the MVRs. I respectfully dissent.