# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Port Authority of Allegheny : 
County, : 
               Petitioner : 
                : 
           v. :   No.  92 C.D. 2017
                :   SUBMITTED:  June 9, 2017
William Towne, : 
               Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge[1]
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED:  September 12, 2017**


      The Port Authority of Allegheny County (Authority) petitions for review of a final determination of the Office of Open Records (OOR) that granted the appeal of William Towne (Requester), acting *pro se*, from the Authority's denial of his request for video recordings from cameras aboard an identified bus pursuant to Section 708(b)(17) of the Right-to-Know Law (RTKL) (noncriminal investigation exception to public disclosure of records).[2]  On appeal, we consider whether the OOR erred in determining that the recordings were not exempt from public disclosure and directing that the Authority provide them to Requester.  We conclude that the recordings were exempt from disclosure and, therefore, reverse.

      In October 2016, Requester submitted an e-mail request to the Authority seeking:  "All video recordings from all cameras aboard the bus running

---

[1] This decision was reached before Judge Hearthway's service with the Court ended on September 1, 2017.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(17).

Route 67 which turned from Beeler onto Wilkins Avenue nearest to 10pm on the night of April 14, 2016, for that run of that route." October 20, 2016, Request at 1; Reproduced Record (R.R.) at 14a. After invoking a thirty-day extension in which to respond,[3] the Authority denied the request pursuant to the noncriminal investigation exception. In support, the Authority stated:

> Inasmuch as [the] Authority has downloaded and maintained bus surveillance video from the incident at issue [two vehicles collided when one sought to avoid a bus collision], [the] Authority did so specifically because its Claims Department engaged in a noncriminal investigation arising from the incident as said incident and video may pertain to and depict the conduct of involved parties and civil proceedings that are thereby implicated. It should also be noted that the Requester inspected the bus surveillance video on June 24, 2016, in the offices of [the] Authority and is invited to inspect the video again at [its] offices. . . .

December 1, 2016, Response at 5; R.R. at 36a.

Requester appealed, *inter alia*, averring that a portion of the recordings from one of the cameras was very limited, that he was not permitted to hear audio components from any of the recordings, and that he was advised of secret records which the Authority allegedly excluded. Further, observing that the Authority regularly collected video recordings for each bus from multiple cameras, he maintained that the recordings were not the result of any investigation. December 13, 2016, Appeal; R.R. at 9-10a.

In response, the Authority submitted a position statement describing the context of the request[4] and three affidavits. By way of background, Requester

---

[3] *See* Section 902(b) of the RTKL, 65 P.S. § 67.902(b).

[4] It is well established that a requester's interest for seeking disclosure of a public record is irrelevant. *E.g.*, *Current Status, Inc. v. Hykel*, 778 A.2d 781, 784 n.3 (Pa. Cmwlth. 2001). To **(Footnote continued on next page…)**

2

filed a property damage claim with the Authority claiming that he collided with a vehicle on the date in question in order to avoid a collision with a bus, a property damage lawsuit against the Authority before a magisterial district judge, and a complaint in common pleas court claiming that the Authority and its bus driver violated the Vehicle Code.[5] Ultimately, Requester settled his claim with the Authority and discontinued his appeal in common pleas court. December 23, 2016, Submission from Authority at 1-4; R.R. at 39-42a.

The Authority's three affidavits were from Mr. Miller, Chief Operating Officer; Mr. Stoker, Director of Claims; and Mr. Monks, Associate Counsel. Mr. Miller explained that each bus is equipped with multiple cameras, a digital video recorder, and a hard drive that stores the recorded video surveillance footage. Depending on the size of the bus's respective hard drive, the existing footage is overwritten with new footage anywhere from fourteen to thirty days after the recording date. Mr. Miller stated that the footage is not regularly or periodically downloaded, viewed, or saved for general quality control or for performance operations purposes. It is only downloaded and reviewed when an incident, claim, or accident is reported, thereby triggering an investigation. Further, he indicated that the Authority limits access to the recordings to recipients such as Authority police and the claims department for purposes of investigating accidents and complaints. Finally, he indicated that access requires the approval of the Chief Operating Officer. January 12, 2017, OOR Final Determination at 7-8; R.R. at 127-28a.

_____

(continued…)
the extent that the background of the present request relates to the applicability of the noncriminal investigation exception and does not prejudice Requester, we have included it.

[5] 75 Pa. C.S. §§ 101 - 9805.

3

Mr. Stoker described how the recordings requested in the present case were used in the Authority's investigation of Requester's property damage claim. The footage from the cameras on the subject bus was downloaded to an outside server for the claims department's review. Reiterating that the footage would not have been requested or downloaded in the absence of an investigation, which was true for all situations, Mr. Stoker stated that the adjuster's investigation included a site visit to the intersection at issue to ascertain the sequencing of the traffic lights, a review of the bus surveillance video, a review of the bus operator's report, and a review of Requester's submissions. Although the adjuster found the recordings to be inconclusive as to whether there was contact between the bus and Requester's vehicle, Mr. Stoker acknowledged that the recordings were reviewed as part of the claims investigation. *Id.*

Mr. Monks described the processing of administrative claims against the Authority. He stated that, once Requester's property damage claim was opened, "a representative from the Claims Department requested that the bus surveillance video be located, preserved and provided to the Claims Department for review as part of its investigation of [Requester's] claim." December 23, 2016, Submission from Authority, Affidavit of Mr. Monks at 2; R.R. at 46a. Mr. Monks also described viewing the recordings with Requester at the Authority's offices, stating that access to all seven camera angles was provided and that no additional secret footage existed. Otherwise, Mr. Monks described the ensuing litigation and the outcome of that litigation. *Id.* at 3-5; R.R. at 47-49a.

After reviewing the Authority's response, Requester contested some of the factual averments, including the number of videos made available, and a description of what they depicted. Subsequently, the OOR Appeals Officer sent an e-mail advising the parties of the potential applicability of what was then a pending appeal in the Supreme Court involving motor vehicle recordings (MVRs) created

by the Pennsylvania State Police (PSP) and the criminal investigation exception found in Section 708(b)(16) of the RTKL: *Pennsylvania State Police v. Grove*, 119 A.3d 1102 (Pa. Cmwlth. 2015), *aff'd in part, rev'd in part, and remanded*, 161 A.3d 877 (Pa. 2017). Having failed to secure Requester's consent to a stay of a final determination from OOR pending a decision in *Grove*,[6] the OOR granted his appeal thereby requiring the Authority to provide the requested recordings. The Port Authority's petition for review to this Court followed.

As a Commonwealth agency, the Authority is required to provide a requester with access to a public record pursuant to Section 301 of the RTKL, 65 P.S. § 67.301.[7] There is a presumption of openness as to any information of a Commonwealth agency that qualifies as a public record. Section 305(a) of the RTKL, 65 P.S. § 67.305(a). "The burden of proving that a record of a Commonwealth agency . . . is exempt from public access shall be on the Commonwealth agency . . . receiving a request by a preponderance of the evidence." Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1). A preponderance of the evidence is that proof that would lead a fact-finder to find that the existence of a contested fact is more probable than its nonexistence. *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 438-39 (Pa. Cmwlth. 2011). In addition, "[c]onsistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed." *Office of Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015).

---

[6] *See* Section 1101(b)(1) and (2) of the RTKL, 65 P.S. § 67.1101(b)(1) and (2) (requiring the OOR Appeals Officer to issue a final determination within thirty days unless the requester consents to an extension of time).

[7] "Commonwealth agency" is defined in Section 102 of the RTKL, 65 P.S. § 67.102.

In pertinent part, the exception at issue exempts from public disclosure: "A record of an agency *relating to* a noncriminal investigation, including: . . . [*i*]*nvestigative materials*, notes, correspondence and reports." Section 708(b)(17)(ii) of the RTKL (emphasis added). In the absence of definitions in the RTKL for either "noncriminal" or "investigation," we have concluded that "noncriminal" applies to investigations other than those which are criminal in nature and that "investigation" means "a systematic or searching inquiry, a detailed examination, or an official probe." *Dep't of Health v. Office of Open Records*, 4 A.3d 803, 810-811 (Pa. Cmwlth. 2010). The inquiry, examination, or probe must be "conducted as part of the agency's official duties." *Id*. at 814. *See also Dep't of Pub. Welfare v. Chawaga*, 91 A.3d 257, 259 (Pa. Cmwlth. 2014) (holding that, an official probe must be conducted pursuant to an agency's legislatively granted fact-finding and investigative powers).

In the present case, the OOR determined that the Authority investigated the factual allegations of Requester's claim pursuant to its right and power "[t]o do all acts and things necessary for the promotion of its business, and the general welfare of the authority to carry out the powers granted to it by this act or any other acts" and "[t]o self insure or otherwise provide for insurance of any property or operations of the authority against any risks or hazards." Sections 3(b)(15) and (22) of the Second Class County Port Authority Act.[8] Although the OOR concluded that the Authority established that investigating self-insurance claims related to its legislatively-granted authority, it determined that the recordings were not related to or the result of a noncriminal investigation. In support, it reasoned as follows:

---

[8] Act of April 6, 1956, P.L. (1955) 1414, *as amended*, 55 P.S. §§ 553(b)(15) and (22).

6

> Because the bus videos are created prior to and independent of any investigation, they cannot be said to exist "merely or primarily" for investigative purposes and thus cannot be said to "relate" to a noncriminal investigation. In this regard, video records are no different than any other records that become part of an investigation. For example, an agency's invoices and receipts are not exempt from disclosure under the RTKL because an investigation is being conducted into how an agency uses government funds. Further, there is no evidence that the bus videos include any inherently investigative content such as "witness interviews, interrogations, intoxication testing and other investigative work." *See Grove*, 119 A.3d 1102 [(Pa. Cmwlth. 2015).]

January 12, 2017, OOR Final Determination at 8-9; R.R. at 129-30a (footnote omitted). We reject the OOR's reasoning.

As the OOR concluded, the Authority's noncriminal investigation of a property damage claim submitted to its claims department was within its legislatively-granted powers pertaining to its status as a self-insurer. However, the OOR erred in determining that the recordings automatically could not exist "merely or primarily" for investigative purposes and "relate" to a noncriminal investigation by virtue of the fact that they were created before an investigation and independent thereof. The Authority's affidavits bely this conclusion. As Mr. Miller stated, the footage is not regularly or periodically downloaded, viewed, or saved for general quality control or for performance operations purposes, but only downloaded and reviewed when an incident, claim, or accident is reported, thereby triggering an investigation. As Mr. Monks indicated, after a property damage claim is opened, a claims department representative requests that bus surveillance video be located, preserved and provided to it for review as part of its investigation. Accordingly, records created before investigations and accessed only when necessary can constitute investigative records, especially when the

7

agency asserts that their only purpose is for use in investigations. We turn to *Grove* for additional support.

In *Grove*, the MVRs at issue were from two PSP troopers who arrived on the scene of an accident. Trooper Vanorden's MVR was recorded from his vehicle and contained video only, showing him speaking to individuals involved in the accident, examining vehicle damage, directing one of the drivers to move his vehicle to a safer area, and relaying information to Trooper Thomas upon his arrival. Trooper Thomas's MVR contained both video and audio recordings of his interviews with the two drivers, as well as bystanders. The investigative information on Trooper Thomas's MVR included his conversations with the operators involved and the bystanders in an attempt to ascertain how the accident occurred. The PSP conceded that the only potential investigative information consisted of the verbal statements on Trooper Thomas's MVR, which this Court expressly ordered should be redacted before release of the MVR.

On appeal, the Supreme Court held that we correctly determined that MVRs were not exempt from disclosure as a general rule and that whether they contained criminal investigative material had to be determined on a case-by-case basis. *Grove*, 161 A.3d at 894. To that end, the Court referenced an affidavit providing that an MVR will be retained when a person captured on the recording notifies PSP of his or her intent to use it in civil proceedings, which supports a conclusion that the MVRs do not always "relate to" or "result in" criminal investigations such that they should lead to a *per se* exemption under Section 708(b)(16) of the RTKL. *Id*. at 893. Accordingly, emphasizing the PSP's burden as the agency seeking an exemption to demonstrate that a record falls within such an exemption, the Court rejected the PSP's position that MVRs are generally exempt and always contain criminal investigative material. *Id*. at 894.

Moreover, especially in light of the fact that the PSP did not explain how the video portion of the recordings captured any criminal investigation, the Court found no error in our conclusion that Trooper Vanorden's MVR and the video aspects of Trooper Thomas's MVR were not exempt from release pursuant to the criminal investigation exemption. In so determining, the Court noted that it was clear that Trooper Thomas acquired the requisite information to issue citations via his conversations with witnesses and drivers. In other words, the fact and the nature of the Vehicle Code violations could not have been gathered from the video-only aspect of the MVRs. *Id*. at 895. Accordingly, the Court affirmed that portion of our decision determining that "Trooper Vanorden's MVR and the video aspects of Trooper Thomas's MVR [were] not exempt from release to Grove pursuant to Section 708(b)(16). . . ." *Id*.

Turning specifically to the applicability of *Grove* to the present case, we note that, similar to the recordings herein at issue, the MVRs in *Grove* "are retained and destroyed by PSP on a normal schedule, but will not be destroyed when there is an anticipation the records are going to [be] used 'in civil, criminal, quasi-criminal, forfeiture, administrative enforcement or disciplinary proceedings.'" *Id*. at 884. As the Court determined, the portion of the MVR with an investigative record was exempt from disclosure under the relevant exemption. Consistent with *Grove*, the exempt status of the recordings at issue is not solely determined by the fact that they are created before an investigation and downloaded and reviewed only after an incident, claim or accident is reported thereby triggering an investigation. Accordingly, we reject the OOR's rationale that, because the recordings were created before and independent of any investigation, "they cannot be said to exist 'merely or primarily' for investigative purposes and thus cannot be said to 'relate' to a noncriminal investigation." January 12, 2017, OOR Final Determination at 8-9; R.R. at 129-30a. If the OOR's

9

somewhat circular reasoning was correct, then portions of the MVRs in *Grove* never could have constituted investigative records due to the PSP's recording and retention practice.

Moreover, a dissimilarity between the recordings in *Grove* and the ones at issue also supports our determination. Specifically, unlike the MVRs in *Grove*, which an affidavit indicated were also used to document troopers' performance of their duties and interactions with members of the public,[9] the Authority's affidavits indicated that the sole purpose of the recordings was for use in investigations. This brings us to the somewhat intertwined issue of the relatedness between the noncriminal investigation and the Authority's recordings.

In *Grove*, the Court concluded that the PSP failed to explain how the video portion of the MVRs captured any criminal investigation. In contrast, the Authority in the present case submitted affidavits as to how it investigated Requester's claim and the circumstances under which it downloaded and reviewed its recordings when undertaking a noncriminal investigation of a claim. As noted, Mr. Stoker stated that the Authority's claims adjuster reviewed the recordings as part of its investigation. Even though Mr. Stoker indicated that the adjuster's review of the recordings was inconclusive as to whether there was contact between the bus and Requester's vehicle, the adjuster nonetheless reviewed them as part of the noncriminal investigation into Requester's claim against the Authority. The plain language of the noncriminal investigation exemption is also instructive.

As Section 708(b)(17)(ii) of the RTKL provides, a record is exempt when it relates to a noncriminal investigation and includes "investigative materials." The noncriminal investigation at issue (1) commenced when Requester filed a property damage claim with the Authority involving one of its buses; (2)

---

[9] *Grove*, 161 A.3d at 885.

10

was conducted pursuant to the Authority's self-insurance right and power; and (3) was tantamount to a systematic or searching inquiry and/or a detailed examination. *Dep't of Health*, 4 A.3d at 810-811 (holding that an "investigation" means "a systematic or searching inquiry, a detailed examination, or an official probe"). Accordingly, the recordings, which the adjuster reviewed in the course of investigating Requester's property damage claim, were related to and, indeed, part of the noncriminal investigation such that they constituted investigative materials. *See Fennell v. Pa. Game Comm'n*, 149 A.3d 101, 105 (Pa. Cmwlth. 2016) (holding that the requested materials, a copy of a report or anything put on record regarding the Commission's investigation into a tree stand that was allegedly too close to a house, fell within noncriminal investigation exemption). The fact that the adjuster found the recordings to be inconclusive as to whether its bus collided with Requester's vehicle is irrelevant in that they just as easily could have been conclusive in that regard. The salient point is that the recordings were sufficiently related to the noncriminal investigation such that they constituted investigative materials under the applicable exemption.

Accordingly, we reverse.

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Port Authority of Allegheny : 
County, : 
               Petitioner : 
             : 
          v. :   No.  92 C.D. 2017
             : 
William Towne, : 
               Respondent : 

# O R D E R

AND NOW, this 12th day of September, 2017, the order of the Office of Open Records is hereby REVERSED.

 

                                        _____
                                        **BONNIE BRIGANCE LEADBETTER,**
                                        Senior Judge