# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PublicSource and Nicole Brambila,     :
                 Petitioners     :
                                      :
          v.                          :
                                      :
Pennsylvania Department of Health     :
(Office of Open Records),             :    No. 1021 C.D. 2020
                    Respondent     :    Argued: September 23, 2021

BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE MICHAEL H. WOJCIK,** Judge (P.)
                **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                          **FILED: November 9, 2021**

PublicSource and Nicole Brambila (Brambila) (collectively, Requesters)[1] petition this Court for review of the Pennsylvania Office of Open Records' (OOR) September 18, 2020 Final Determination denying their appeal from the Pennsylvania Department of Health's (Department) denial of their Right-to-Know Law (RTKL)[2] request for 2019 and 2020 pneumonia and influenza death statistics by county (Request). Requesters present five issues for this Court's review: (1) whether the OOR erred in concluding that the requested data was exempt from disclosure because it was connected with a noncriminal investigation under Section 708(b)(17) of the RTKL, 65 P.S. § 67.708(b)(17); (2) whether the OOR erred in concluding that the requested data was exempt from disclosure because it constituted individual health information under Section 708(b)(5) of the RTKL, 65 P.S. § 67.708(b)(5), or other personal information under Section 708(b)(6)(i)(A) of the RTKL, 65 P.S.

---

[1] PublicSource is a nonprofit news outlet in Pittsburgh, Pennsylvania. Brambila was a government reporter for PublicSource at the relevant time. (*See* Requesters' Brief (Br.) at 5.)

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

§ 67.708(b)(6)(i)(A); (3) whether the OOR erred in concluding that the requested data was exempt from disclosure under the Disease Prevention and Control Law of 1955 (DPCL);[3] (4) whether the OOR erred by concluding that the Department would be required to correlate and aggregate information by manually coding and verifying the information from death records to produce the aggregated information; and (5) whether the OOR erred in determining that the death records used to create the aggregated data published in the Enterprise Data Dissemination Informatics Exchange (EDDIE)[4] database are confidential under the Vital Statistics Law of 1953 (VSL)[5] and cannot be provided until they are compiled for the EDDIE database. After review, this Court affirms.

## I.  BACKGROUND

On May 21, 2020, Requesters submitted the Request to the Department for "copies of public records that show pneumonia and influenza deaths in [the Commonwealth of] Pennsylvania [(Commonwealth)] by county and date for 2015, 2016, 2017, 2018, 2019, and Jan[uary] 1, 2020[,] through May 21, 2020, as reported

---

[3] Act of April 23, 1956, P.L. (1955) 1510, *as amended*, 35 P.S. §§ 521.1-521.21.

[4] According to an affidavit submitted to the OOR by the Department:

> EDDIE is an interactive health statistics dissemination tool for various health related data.  The following data sets are available through EDDIE: Adult Lead; Air Quality; Behavioral Risk Factor Surveillance System (BRFSS); Birth Defects; Births; Cancer Incidence; Carbon Monoxide Poisoning Mortality; Childhood Cancer Incidence; Childhood Lead Poisoning; Children Less than Age 5 Living in Poverty; Communicable Diseases (other than [Sexually Transmitted Diseases (]STDs[)]); Deaths; Drinking Water Quality; Hospitalization Admissions; Hospitalization Discharges; Housing by Year Built; Infant Deaths; Population; Reported Pregnancies; Reproductive Health Outcomes; and [STDs].

(Reproduced Record (R.R.) at 32a.)

[5] Act of June 9, 1953, P.L. 304, *as amended*, 35 P.S. §§ 450.101-450.1003.

to the Centers for Disease Control and Prevention [(CDC)]." (Reproduced Record (R.R.) at 1a.)

On July 6, 2020,[6] the Department granted the Request in part, and denied it in part (Final Response). (*See id.* at 4a-6a.) The Department provided Requesters with the internet link where the requested information was published for the years 2015 through 2018.[7] (*See id.* at 4a.) The Department denied the portion of the Request for the 2019 and 2020 information on the basis that reports of communicable and non-communicable diseases and the Department's epidemiological investigations were, at that time, exempt from public access by RTKL Sections 102 (public record defined)[8] and 305(a)(3) (exception to public record presumption),[9] 708(b)(5)

---

[6] On March 6, 2020, Pennsylvania Governor Tom Wolf (Governor Wolf) issued a Proclamation of Disaster Emergency (Proclamation) in response to the COVID-19 pandemic. *See Wolf v. Scarnati*, 233 A.3d 679 (Pa. 2020); *see also* "Process to Reopen Pennsylvania." https://www.governor.pa.gov/process-to-reopen-pennsylvania/ (archived) (last updated Nov. 19, 2020 and last visited Nov. 8, 2021). On March 19, 2020, Governor Wolf issued an Executive Order that compelled the closure of the physical operations of all non-life-sustaining Commonwealth businesses and agencies to reduce the spread of COVID-19. *See id.* The Department's offices were closed from March 16 to May 29, 2020, due to the COVID-19 pandemic. (*See* Department's Br. at 4; *see also* R.R. at 2a.) On June 3, 2020, Governor Wolf renewed the Proclamation for an additional 90 days. *See Wolf*, 233 A.3d at 685; *see also* "Process to Reopen Pennsylvania." On June 5, 2020, the Department issued an interim response, invoking a 30-day extension, pursuant to Section 902 of the RTKL, 65 P.S. § 67.902, to issue its final response. (*See* R.R. at 2a-3a.)

[7] *See* https://gis.cdc.gov/grasp/fluview/mortality.html (last visited Nov. 8, 2021).

[8] Section 102 of the RTKL defines "public record" as:

A record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under [S]ection 708 [of the RTKL]; (2) is not exempt from being disclosed under any other [f]ederal or [s]tate law or regulation or judicial order or decree; or (3) is not protected by a privilege.

65 P.S. § 67.102.

[9] Section 305(a)(3) of the RTKL provides: "A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if . . . the record is exempt from disclosure under any other [f]ederal or [s]tate law or regulation or judicial order or decree." 65 P.S. § 67.305(a)(3).

3

(relating to individually identifiable health information), 708(b)(6)(i)(A) (relating to personal identification information), 708(b)(17) (relating to noncriminal investigations), and strict confidentiality provisions in Section 15 of the DPCL, 35 P.S. § 521.15, and its attendant regulations,[10] and Section 2102(a)-(b) of The Administrative Code of 1929 (Administrative Code) (relating to Department powers and duties).[11] (*See* R.R. at 4a-6a.)

---

[10] Section 27.3 of the Department's Regulations mandates:

(a) A person required to report under this chapter shall report an outbreak within 24 hours, and in accordance with [Section 27.4 of the Department's Regulations, 28 Pa. Code] § 27.4 (relating to reporting cases [of communicable and non-communicable diseases]).

(b) A person required to report under this chapter who suspects a public health emergency, shall report an unusual occurrence of a disease, infection or condition not listed as reportable in Subchapter B (relating to reporting of diseases, infections and conditions) or defined as an outbreak, within 24 hours, and in accordance with [Section] 27.4 [of the Department's Regulations].

(c) Any unusual or group expression of illness which the Department designates as a public health emergency shall be reported within 24 hours, and in accordance with [Section] 27.4 [of the Department's Regulations].

28 Pa. Code § 27.3.

[11] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 532(a)-(b). Section 2102(a)-(b) of the Administrative Code states, in pertinent part:

The Department . . . shall have the power, and its duty shall be:

(a) To protect the health of the people of this Commonwealth, and to determine and employ the most efficient and practical means for the prevention and suppression of disease;

(b) To cause examination to be made of nuisances, or questions affecting the security of life and health, in any locality, and, for that purpose, without fee or hindrance, to enter, examine and survey all grounds, vehicles, apartments, buildings, and places, within the Commonwealth, and all persons, authorized by the [D]epartment to enter, examine and survey such

4

On July 21, 2020, Requesters appealed to the OOR, asserting that: the CDC link provided access to a statewide tally of pneumonia and influenza deaths only for certain weeks, and none of it by county; the noncriminal investigation exemption does not apply to aggregated data by operation of Section 708(d) of the RTKL, 65 P.S. § 67.708(d); aggregated data does not include personal or identifying information; the nature of the requested data makes the Department's reliance on other state law misplaced; and the Request mirrored the data the Department submits to the CDC and releases to the public on EDDIE,[12] which then offered pneumonia and influenza death data by county through 2018, but not for 2019 and 2020. (*See* R.R. at 7a-10a.)

By July 21, 2020 letter, the OOR allowed the parties to submit information and/or legal argument to support their positions. (*See* Certified Record (C.R.) Item 2.) On August 11, 2020, the Department filed its Legal Argument in Response to Requesters' RTKL Appeal (Department's Response), (*see* R.R. at 11a-35a), wherein the Department recounted: "The Department provided a link to responsive information made publicly available through the [CDC]." (*Id.* at 12a.) The Department explained: "Brambila erroneously states in her appeal that the link provided by the Department in its Final Response only contains three weeks of data. However, the link contains additional yearly and weekly information that can be accessed via different selections within the CDC Fluview Interactive dashboard." (*Id.* at 12a n.1.) The Department also declared:

> [T]he Department is unable to provide an aggregate data [sic] responsive to Brambila's request, because *said data has not yet been compiled.* Attached as Exhibit A please find the EDDIE Data Release

grounds, vehicles, apartments, buildings and places, shall have the powers and authority conferred by law upon constables[.]

71 P.S. § 532(a)-(b).

[12] https://www.phaim1.health.pa.gov/EDD/ (last visited Nov. 8, 2021).

Schedule, indicating that death statistics for 2019 will be compiled and posted on EDDIE in the first quarter of 2021. There is no currently set date to compile and release aggregate death data for 2020.[13]

(*Id.* at 13a.) A verification by Epidemiologist Manager of the Department's Board of Epidemiology, Atmaram Nambiar, M.D. (Dr. Nambiar), issued under penalty of perjury, supported the Department's Response. (*See id.* at 25a-28a.) The Department further argued that the withheld records were not public records because Section 15 of the DPCL prohibited their disclosure, the requested records related to a noncriminal investigation, and the 2019 and 2020 records would require the Department to create a record in contravention of Section 705 of the RTKL, 65 P.S. § 67.705.

On August 12, 2020, the OOR sought clarification that Brambila was seeking the remaining information for 2019 and 2020 that the Department had not provided. (*See* C.R. Item 4.) Brambila confirmed the Request. (*See id*.) In addition, the OOR asked that the Department submit an affidavit explaining how the information not currently on EDDIE exists. (*See* C.R. Item 5.) On August 17, 2020, the Department supplemented the record with a verification by the Director of the Department's Bureau of Health Statistics and Registries (Bureau), Audrey Marrocco (Marrocco). (*See* C.R. Item 6, R.R. at 29a-35a.) Paragraph 22 of Marrocco's verification reflects: "The Department provides the CDC with a daily list of raw death data." (R.R. at 33a.) On August 19, 2020, the OOR asked the Department to explain why the raw data it supplied to the CDC was not responsive to the Request. (*See* C.R. Item 8.) That same day, the Department responded that raw data differs from aggregated data, and that raw data is exempt from access under Section 15 of the DPCL and the VSL. (*See id*.)

---

[13] At oral argument, the parties acknowledged that the 2019 data has since been publicly released and that the 2020 data is expected to be available in a couple months.

On September 18, 2020, the OOR issued the Final Determination,[14] upholding the Department's Response and denying Requesters' appeal. The OOR specifically ruled that the Department proved that there was no database from which it could simply pull the requested information for 2019 and 2020 and that the raw data it supplies to the CDC, which the CDC uses to compile, code, and aggregate the data for the EDDIE database, is confidential under the VSL and *Gries v. Pennsylvania Department of Health*, OOR Dkt. AP 2011-1124, filed September 9, 2011.[15] (*See* Final Determination at 7-9, R.R. at 42a-44a.) On September 28, 2020, Requesters sought reconsideration, which the OOR denied. (*See* R.R. at 45a-48a.) Requesters appealed to this Court.[16, 17]

## II.    DISCUSSION

Initially, "[t]he RTKL was designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." *Off. of the Governor v. Raffle*, 65 A.3d 1105, 1107 n.1 (Pa. Cmwlth. 2013) (citation omitted). Section 701(a) of the RTKL declares that, "[u]nless otherwise provided by law, a public record . . . shall be accessible for inspection and duplication in accordance with [the RTKL]." 65 P.S. § 67.701(a). Accordingly, Section 301(a) of the RTKL requires that "[the Department,] shall provide public records in accordance with [the RTKL]." 65 P.S.

---

[14] The OOR noted: "[N]either party requested a hearing; however, the OOR ha[d] the necessary information and evidence before it to properly adjudicate the matter." (Final Determination at 3, R.R. at 38a.)

[15] This Court acknowledges that "OOR decisions have no precedential value in this Court[.]" *Pa. State Police v. Grove*, 119 A.3d 1102, 1109 n.4 (Pa. Cmwlth. 2015), *aff'd in part*, *rev'd in part on other grounds*, 161 A.3d 877 (Pa. 2017) (citation omitted).

[16] "As th[e] issue[s] present[] a question of law, our standard of review is de novo, and our scope of review is plenary." *Easton Area Sch. Dist. v. Miller*, 232 A.3d 716, 721-22 (Pa. 2020).

[17] The Pennsylvania NewsMedia Association filed an *amicus curiae* brief in support of Requesters' appeal.

§ 67.301(a). Notwithstanding, Section 705 of the RTKL specifies that, "[w]hen responding to a request for access, [the Department] shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705.

This Court has explained:

> Records[18] in the possession of a Commonwealth agency are presumed to be public records. However, this "presumption shall not apply if: (1) the record is exempt under [S]ection 708 [of the RTKL, 65 P.S. § 67.708]; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other [f]ederal or [s]tate law, regulation or judicial order or decree." Section 305(a) of the [RTKL], 65 P.S. § 67.305(a)[; *see also* Section 102 of the RTKL, 65 P.S. § 67.102].

*Advancement Project v. Pa. Dep't of Transp.*, 60 A.3d 891, 894 (Pa. Cmwlth. 2013).

Notably, Section 708(d) of the RTKL expressly authorizes the disclosure of "aggregated data maintained or received by an agency" that is not otherwise protected under RTKL Section 708(b)(1) (personal security exception); (2) (public safety exception); (3) (physical/infrastructure security exception); (4) (computer security exception); and (5) (medical records exception). 65 P.S. § 67.708(d). "Aggregated data" is defined in Section 102 of the RTKL as "[a] tabulation of data which relate[s] to broad classes, groups or categories so that it is not possible to distinguish the properties of individuals within those classes, groups or categories." 65 P.S. § 67.102.

Section 306 of the RTKL states that "[n]othing in th[e RTKL] shall supersede or modify the public or nonpublic **nature** of a record or document established in

---

[18] Section 102 of the RTKL defines "[r]ecord" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." 65 P.S. § 67.102. The parties do not dispute that the Request seeks a Department record.

8

[f]ederal or [s]tate law, regulation or judicial order or decree." 65 P.S. § 67.306 (emphasis added). Section 3101.1 of the RTKL similarly provides that "[i]f the provisions of [the RTKL] regarding **access** to records conflict with any other [f]ederal or [s]tate law, the provisions of [the RTKL] shall not apply." 65 P.S. § 67.3101.1 (emphasis added).

> The burden of proving a record does not exist, or is exempt from disclosure, is placed on the agency responding to the right-to-know request [by a preponderance of the evidence].[19] *See* [Section 708(a)(1) of the RTKL,] 65 P.S. § 67.708[(a)(1)]. This Court has stated that an agency may satisfy its burden of proof that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record.

*Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011) (citation omitted). This Court has consistently held:

> "Testimonial affidavits found to be relevant and credible may [also] provide sufficient evidence in support of a claimed exemption." *Heavens v. Dep*['t] *of Env*['t] *Prot*[.], 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013).
>
>> Affidavits are the means through which a governmental agency . . . justifies nondisclosure of the requested documents under each exemption upon which it relied upon. The affidavits must be detailed, nonconclusory, and submitted in good faith . . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.
>
> *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc*) (citation omitted).

*McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014); *see also Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515 (Pa. Cmwlth. 2011).

---

[19] "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Delaware County v. Schaefer ex rel. The Phila. Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012).

In the instant matter, Marrocco attested:

5. Pursuant to the authority given to the Department by the VSL, the Bureau collects and maintains vital records, including records relating to vital events such as births and deaths.

6. The Bureau uses the Data Application for Vital Events (DAVE) to maintain an electronic registry database for these vital records.

7. The Bureau receives death information for persons who have died in the Commonwealth through a reporting system and creates and maintains death records based on those reports.

8. Deaths are to be reported to the Bureau on paper or electronically within 96 hours of the death occurring.

9. A death report contains two parts: a medical certification portion to be completed by a medical professional, coroner or medical examiner as prescribed by the VSL; and a demographic portion to be completed by the person charged with internment, which is usually a funeral home.

10. The medical certification portion of the death report includes the manner and cause of death as determined by the medical certifier.

11. Electronic death reports can be directly entered into DAVE using the Electronic Death Registry System (EDRS), but paper reports are received through the mail[,] which require a manual review and data entry by the Bureau to verify the report is complete and internally consistent. The data entry and review of paper reports is conducted over the course of several months before death record data is finalized for statistical health reporting purposes.

12. When both portions of the death report are complete, the Bureau registers the death, which creates a death record.

13. Once a death is registered and [a] death record is created, the Department can issue certified death certificates or data contained in death records to three classes of persons: family members; research institutions; and government agencies conducting an official duty. [*See* Sections 804-806 of the VSL,] 35 P.S. §[§] 450.804-450.806.[20]

_____

[20] Section 804 of the VSL provides:

14. With the exception of those three classes of persons, vital records, including death records, are confidential and not open to public inspection. [*See*] 35 P.S. § 450.801.

(Marrocco Affidavit at 2-3, R.R. at 30a-31a.)

Relative to preparing information for the EDDIE database, Marrocco declared:

15. In addition to providing vital statistics records and data to eligible persons, the Bureau also uses vital events statistics and other health statistics to inform the public on health and demographic trends in the Commonwealth.

16. On an annual basis, the Bureau, with assistance from the Pennsylvania Office of Administration's Office of Information Technology (OAOIT), issues reports through the [EDDIE].

. . . .

18. For cause of death statistics in EDDIE, the Bureau uses aggregate data based on ICD-10 coding to create reports relating to causes of death.[FN]1

> [FN]1 ICD-10 stands for the 10th revision of the International Statistical Classification of Diseases and Related Health Problems, a standardized medical

---

Except for records described in [S]ections [802 of the VSL, 35 P.S. § 450.802 (relating to marriage, adoption and divorce records),] and [803 of the VSL, 35 P.S. § 450.803 (relating to records of illegitimacy of birth)], the [D]epartment shall issue certified copies of or disclose a vital statistics record or part thereof if an officer of the [D]epartment designated by the Secretary of Health finds that the applicant therefor has a direct interest in the content of the record and that the information contained therein is necessary for the determination of personal or property rights.

35 P.S. § 450.804. Under Section 805 of the VSL, "[t]he [D]epartment may permit the use of vital statistics records or parts thereof for research, subject to strict supervision by the [D]epartment to insure that the use of the records is limited to research purposes." 35 P.S. § 450.805. Pursuant to Section 806 of the VSL, "[t]he [D]epartment may disclose information or data from vital statistics records to federal, state or municipal agencies of government which request such information or data in the interest of conduct of official duty." 35 P.S. § 450.806.

11

classification system adopted by the World Health Organization.

19. The cause of death EDDIE reports include[] information for Pennsylvania residents who died in another jurisdiction in addition to information for all individuals who died in Pennsylvania. This out-of-state information is generally received by the Bureau within six to nine months of the occurrence of the out-of-state death.

20. To obtain consistent ICD-10 coding, and in accordance with national standards, the Bureau shares death information with the [CDC]. The CDC then provides the Bureau with an extraction file to apply the ICD-10 codes to the Bureau's death records.

21. The application of the CDC extraction file to the Bureau records is in part a manual process in that Bureau personnel ha[ve] to apply the file to the records. This process also requires the Bureau to research individual cases where cause of death information needs to be clarified prior to applying an ICD-10 code.

22. The Department provides the CDC with a daily list of raw death data.

23. While the CDC posts on its website this data received by states and other sources, Pennsylvania's data is generally more accurate due to the increased quality control and additional research applied to the data prior to dissemination.

24. Prior to aggregating and disseminating death information, the Bureau must obtain outstanding paper reports and completed reports for deaths involving autopsies, toxicology reports, and deaths requiring similar post-mortem tests and analysis.

25. This updated death data is provided to the CDC once finalized, and the CDC updates its own already-reported data according to its own internal schedule. After the ICD-10 codes are completely applied and the aggregate report is generated, the Bureau provides the information to OAOIT to incorporate into EDDIE.

26. The Bureau provides its aggregated data, which includes a breakdown by county, only after ICD-10 codes are applied, death data requiring extended medical review is received, and research and quality control measures are performed.

27. Prior to the application of the ICD-10 codes, death records cannot be efficiently compiled and aggregated into a report based on a cause of death. A manual nosology coding and verification process would be required.

28. Until the cause of death is aggregated into a report, the only place where the cause of death information appears is on a decedent's death record and the death record and data contained therein is confidential under the VSL.

29. The records requested deal with the Department's system of vital statistics records.

(Marrocco Affidavit at 3-6, R.R. at 31a-34a.)

Requesters presented no evidence that led the OOR to question the veracity of the Department's affidavits or to find the Department acted in bad faith in declaring that the withheld records were exempt from disclosure. The OOR found, based on the Department's Response and the affidavits, that the Department would have to correlate, verify, extrapolate, and code the information from death records (manually, in some cases) and present it in a different way than was available to Department employees before it could produce the information to Requesters. Although drawing information from a database does not constitute creating a record under Section 705 of the RTKL, an agency need not manipulate the data or produce it in a specific requested or unique format, as Requesters in this case desired (i.e., by county/year). *See Dep't of Env't Prot. v. Cole*, 52 A.3d 541, 547 (Pa. Cmwlth. 2012).

Further, the presumption that a Commonwealth agency's record is a public record subject to public access depends, in relevant part, on whether it "is exempt from disclosure under any other . . . [s]tate law . . . ." 65 P.S. § 67.305(a)(3); *see also* 65 P.S. § 67.102; *Advancement Project*, 60 A.3d at 894. In addition, where the RTKL conflicts with state law regarding a record's public nature and/or public

access, state law supersedes the RTKL. *See* 65 P.S. §§ 67.306 (relating to public nature), 67.3101.1 (relating to public access).

Relevant to the instant appeal, Section 801 of the VSL provides:

> The vital statistics records of the [D]epartment and of local registrars shall not be open to public inspection except as authorized by the provisions of [the VSL] and the regulations of the Advisory Health Board. Neither the [D]epartment nor local registrars shall issue copies of or disclose any vital statistics record or part thereof created under the provisions of this or prior acts except in compliance with the provisions of [the VSL] and the regulations of the Advisory Health Board. When one hundred five (105) years have elapsed after the date of birth or fifty (50) years have elapsed after the date of death, the records shall become public records. To ensure the proper safekeeping of original birth records after one hundred five (105) years and death records after fifty (50) years the records shall be maintained by the State Archives.

35 P.S. § 450.801. Section 105(2) of the VSL defines "vital statistics" to "include[] the registration, preparation, transcription, collection, compilation, analysis and preservation of data pertaining to . . . deaths . . . and data incidental thereto." 35 P.S. § 450.105(2). Accordingly, the VSL expressly prohibits the Department from releasing death records for public inspection, except for purposes of determining personal or property rights, for Department supervised research, or for governmental agencies to conduct their official duties. The Request did not invoke any of the VSL's exceptions.[21]

---

[21] The Department was prohibited by Section 1308(2) of the RTKL, 65 P.S. § 67.1308(2), from requiring Requesters to reveal the purpose or motive for the Request. Section 301(b) of the RTKL further provides that the Department "may not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law." 65 P.S. § 67.301(b). Although Requesters did not make the purpose of the Request known to the Department, Requesters have since volunteered that the intended use for the data was for news reports about whether the Department's "underreporting of COVID-19 deaths was potentially linked to untested home-deaths of pneumonia or other comorbidities." (Requesters' Br. at 6.) Requesters' later stated purpose is not a qualified exception to Section 801 of the VSL.

14

It is undisputed that Requesters had access to the CDC and EDDIE databases, which were responsive to the Request for records from 2015 to 2018. The Department established that the 2019 and 2020 information was still in its raw form and not yet available for public access but declared that it would be made available once it was aggregated. Although the Department possessed the raw data from which 2019 and 2020 data would ultimately be derived, the Department was strictly prohibited by the VSL's confidentiality provision from disclosing the raw data to the Requesters. *See Gries*, slip op. at 3 (A requester "cannot obtain access to a vital statistics record, which would include a comp[il]ation of parts of vital statistics records, through the RTKL."). Therefore, the Department properly withheld the raw data from Requesters as required by Section 801 of the VSL.

## III.   CONCLUSION

Because the Department's disclosure of its raw data would have violated Section 801 of the VSL, the OOR properly upheld the Department's Response and denied Requesters' appeal.[22]   Accordingly, the OOR's Final Determination is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

President Judge Brobson did not participate in the decision in this case.

---

[22] Similar to the OOR, the Court finds it unnecessary to address the other issues given its disposition.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PublicSource and Nicole Brambila, : 
                Petitioners : 
                 : 
        v. : 
                 : 
Pennsylvania Department of Health : 
(Office of Open Records), :   No. 1021 C.D. 2020
                Respondent : 

## O R D E R

NOW, November 9, 2021, the Pennsylvania Office of Open Records' September 18, 2020 Final Determination is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge